# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-00090-PAB-MJW

LEHMAN BROTHERS HOLDINGS INC.,

Plaintiff,

v.

UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC,

Defendant.

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Lehman Brothers Holdings, Inc. ("LBHI") hereby submits its Reply to Defendant Universal American Mortgage Company LLC ("UAMC")'s Opposition to Plaintiff's Motion for Partial Summary Judgment ("Response" or "Resp.") as follows:

### I. INTRODUCTION

This is a breach of contract case in which the defendant does not dispute its failure to perform. UAMC addresses only the first-time homebuyer defect. Leaving the other four loan defects unchallenged, UAMC endeavors to distract the Court from the undisputed facts by lodging an array of responses while ignoring the express provisions of the contract. For example, UAMC comments on LBHI's contract with Freddie Mac and claims LBHI should be penalized for relying upon UAMC's representations. There are no *genuine* disputes of material facts. LBHI's Motion should be granted.

### II. REPLY TO UAMC'S RESPONSE TO MATERIAL FACTS

Given UAMC's burden to present affirmative evidence demonstrating a genuine issue of material fact for trial, LBHI will not respond to facts that are simply referenced

as "disputed" without support. FED. R. CIV. P. 56(e) (where UAMC has disputed a fact but failed to cite evidence, Court may "consider the fact undisputed for purposes of the motion); *see also Anderson v. Liberty Lobby*, 477 U.S. 317 (1986).

5. UAMC disputes that Aurora Loan Services' ("ALS") was the administrative agent. Section 100 of the Seller's Guide ("SG") states, "Aurora is the Administrative Agent…" for LBHI's assignor, Lehman Brothers Bank ("LBB"). SG § 100 Ex. 2 to Amend. Compl. [Doc. #7]. UAMC next offers Section 600 as relevant because it "bears on Plaintiff's review…of the loans." Yet, Section 600.5 "Purchase Review" states "Failure of Purchaser to review or discovery any deficiency or error in a Mortgage Loan File will not release Seller from its obligations…nor will it prevent or inhibit Purchaser's exercise of any of its remedies…" This provision is echoed throughout the contract.[1] Thus, Section 600 does not relieve UAMC of its obligations irrespective of Purchaser's review and is therefore immaterial to the whether UAMC breached its obligations.

7, 8, and 11. <u>Standing</u>: First, UAMC is estopped from disputing that it sold the Loan to LBB given its previous judicial admission offered per a Request for Admission as to this fact. Supp. Carrington Decl. Ex. 5.[2]

---

[1] "…Purchaser's remedies for breach…will continue…notwithstanding…failure to examine any related Mortgage Loan File by Purchaser." SG § 712, Baker Decl., Ex. 2. "…Purchaser's rights in connection with Seller's representations, warranties and covenants…are not affected by any investigation or review made by, or on behalf of, Purchaser…" *Id*. at SG § 701. "[F]ailure of Purchaser to review or discover any deficiency or error in the Mortgage Loan at the time of Purchase…will neither release Seller from its obligations…nor will it prevent or inhibit Purchaser's exercise of any of its remedies." *Id.*, SG § 717.

[2] Requests for Admission No. 15: "Admit that UAMC sold Loan 5128…to LBB." Response: "Admitted").

Next, UAMC disputes the Loan was transferred to LBHI, despite the overwhelming evidence to the contrary. First, the Note itself has an ***endorsement*** from LBB to LBHI. Baker Decl. Ex. 6. Next, LBHI's internal records show a transfer from LBB to LBHI of this Loan, ending in 5128, on February 27, 2006 and a transfer from LBHI to Freddie Mac the same day. Baker Decl. Ex. 5. Third, Freddie Mac's demand letter dated March 31, 2008 was directed *to LBHI*. Baker Decl. Ex. 10. Most troubling about UAMC's dispute of this fact is that *UAMC* subpoenaed records from Freddie Mac which evidence the sale of the Loan <u>by LBHI</u> as "Seller" to Freddie Mac. Supp. Carrington Decl., Exs. 6 & 7. Carrington Exhibit 7 demonstrates that this Loan, number ****5128, was sold by LBHI to Freddie Mac on February 27, 2006.

Ignoring the evidence, UAMC offers a webpage printout, referred to as "MERS", found at Moore Decl. Ex. D. The printout is unauthenticated and, moreover, is inadmissible hearsay offered without foundation to support an exception. Ms. Moore states only that her Exhibit D is a "true and correct copy of a MERS Report." Ms. Moore does not work for MERS nor does she profess to be a former employee. Thus, she lacks sufficient knowledge to authenticate this document (or its contents), much less establish a hearsay exception as a business record or otherwise. *See, e.g.*, FED. R. EVID. 901(b)(1); 803. This is not the first time that a MERS third-party website document was offered to attack standing. See, e.g., *LBHI v. PMC Bancorp*, No. LA CV 10-07207 JAK, 2013 WL 1095458, *5 (C.D. Cal. Mar. 8, 2013) (granting summary judgment for LBHI and rejecting same MERS argument made by another loan seller in similar repurchase litigation) (Kronstadt, J.). Also, MERS, as third-party, can only be as

3

accurate as the information provided to it; the source of its information is unknown. The printout is inadmissible, unreliable, and insufficient to overcome LBHI's evidence.

22 - 24. <u>Payment Shock</u>: UAMC disputes the definition and application of payment shock despite the clear language of the Seller's Guide, specifically Section 502. Baker Decl. Exhibit 2.[3] The face of the loan application demonstrates that the borrower's housing payments increased from $1,613.00 to $3,504.10—over double. Baker Decl. Ex. 8 p. 2. In response, UAMC offers Ms. Moore's Exhibit B, an email that was never disclosed in this case—it was disclosed in a different lawsuit on November 1, 2013, over a month after discovery in this matter closed on September 30. Supp. Carrington Decl. ¶ 6 Ex. 8. UAMC has offered no support that the email's author, a customer service representative, had authority to bind LBHI or interpret the contract. Also, the email does not refer to § 502 of the Contract but, instead, refers to a specific product guideline. What's more, the email is dated February 8, 2007, more than two years *after* the Loan was purchased from UAMC on December 30, 2005 and, therefore, it is irrelevant to UAMC's obligations as of date of loan purchase. Baker Decl. Ex. 7. Even if payment shock was discretionary, as the customer service representative claimed, it was not discretionary where the counterparty had been given "delegated underwriting authority." Baker Decl. Ex. 4; SG § 717 (requiring underwriter's **strict compliance** with guidelines absent loan parameter exception request).

Finally, UAMC speculates that the payment listed on the loan application of $1,613 does not include taxes/insurance because the UAMC underwriter included the housing payment in one particular column. Notably, UAMC does not claim that the

---

[3] Henceforth, the Seller's Guide will be cited as "SG" without further citation to its location at Baker Decl. Ex. 2.

underwriter knew of additional payments for taxes and insurance but elected not to report them on the loan application, despite the underwriter's duty to do so. Instead, UAMC's declarant again offers a website printout and claims that taxes and insurance were $275/month. Resp. Moore Decl. Ex. C. Even relying upon this hearsay, UAMC's declarant cannot say whether the $1,613 reported by the borrower included the $275 in taxes and insurance. In any event, the only relevant issue is whether the underwriter, on the information *known to the underwriter at the time*, abided by the guidelines. Here, the information known to the underwriter constituted payment shock, rendering the loan ineligible for a reduced documentation product. SG § 502. UAMC did not convert the Loan to full documentation and thereby breached § 502.

UAMC's complaint that payment shock was not raised in the Florida litigation (Resp. pp. 9-10) is without merit. UAMC successfully severed the Florida litigation and required LBHI to re-file seven loans as seven separate lawsuits. UAMC is in no position to complain that LBHI now is able to focus on one loan at a time and therefore assert additional breaches in greater detail.

26. UAMC again disputes a fact that it knows to be true. ¶ 7, 8, and 11 above.

### III.     ARGUMENT

1. <u>UAMC Leaves Crucial Factual Allegations Unaddressed</u>

LBHI's Motion addresses five loan defects: (1) non-disclosure/misrepresentation of debts; (2) misrepresentation of length of ownership; (3) first-time homebuyer violation; (4) failure to verify mortgage payment history; and (5) payment shock. Of the five defects, UAMC responds with admissible evidence to only one: first-time homebuyer. Assuming *arguendo* that UAMC has raised a question of fact as to this one

5

defect, any of the remaining four defects are sufficient to constitute a breach of the contract and warrant summary judgment. FED. R. CIV. P. 56(e).

For example, UAMC does not dispute that it was bound by its representations that the loan application does not contain an untrue fact or omit a fact necessary to make the statements contained therein not misleading. SG §§ 702, 703(1), 703(12). Nor does UAMC dispute that the borrower failed to disclose two other mortgage debts totaling over $500,000 in liabilities. UAMC claims only that LBHI has offered no evidence to demonstrate that the debts were liabilities of the borrower at the time of the loan application.[4] (Resp. 12). But the burden has shifted to UAMC, and it offers no evidence that the undisclosed debts were paid off by the time of this Loan.

Similarly, UAMC does not dispute that a 12 month Mortgage Pay History (whether first-time homebuyer or not) was required in this case and that UAMC failed to comply. Baker Ex. 14 (p. 4) and SG § 504.2-11. Nor does UAMC dispute that Freddie Mac cited this defect as part of its demand to LBHI. Baker Decl. Ex. 10 p. 3.

As for the borrower's misrepresentation on her loan application of her length of ownership of the "Eagles Watch" property, UAMC claims that because this information was on a credit report obtained by UAMC and transmitted with the sale of the Loan then LBHI was aware of this breach. (Resp. p. 10, n. 4). As such, UAMC admits the existence of this breach but claims that UAMC's representation as to the veracity of the loan application was somehow waived because the evidence of this breach was

---

[4] UAMC admits at ¶ 20 of its response to material facts that the application did not list the undisclosed debt "only insofar as this mortgage was not released or satisfied at the time of loan origination." However, if UAMC had evidence demonstrating the liens were either released or satisfied at the time of application, the burden has shifted to UAMC to submit such evidence. FED. R. CIV. P. 56.

6

discoverable on a credit report. But a waiver of UAMC's obligations may occur "only by written waiver specifying the nature and terms of such waiver." SG § 712. Moreover, UAMC fatally ignores that LBHI had no obligation to review the Loan file. *See* Section II, ¶ 5 above; SG §701, 712, 717, 600.5. To the contrary, as a delegated underwriter, it was *UAMC's* job to underwrite the Loan, which included review of the credit report.

UAMC attempts to distract from its own failures by claiming that LBHI did not provide timely notice of the loan defects or the foreclosure. (Resp. p. 9). But notice by Purchaser (LBHI) was not required. The contract states that repurchase shall occur "no later than thirty (30) days after the earlier of the date on which Purchaser notifies seller of such breach *or the date on which the Seller knows of such breach*." SG § 710.[5] The lack of notice, within a certain timeframe or not, is not a waiver: "…Purchaser's remedies hereunder…shall exist regardless of the dates of Purchaser's discovery and notice to Seller of the breach and Purchaser's demand for any remedy…". SG §§ 710, 712 ("…nor shall any delay by Purchaser in exercising or failure to exercise any right…affect or impair Purchaser's rights…"). UAMC also agreed to the remedies "even if Purchaser discovers a breach after [the] Loan is liquidated in foreclosure." SG § 710.

2. <u>LBHI's Sale of the Loan to Freddie Mac Did Not Release UAMC</u>

UAMC claims that because LBHI sold the Loan upstream to Freddie Mac with representations as to the Loan's quality and underwriting, then LBHI is somehow precluded from challenging UAMC's breaches. UAMC asserts that LBHI was damaged by its own representations, not those of UAMC, and that by relying upon UAMC's

---

[5] See also *LBHI v. Cal. Fin. Group*, No. SACV 09-0666 AG, 2011 WL 4375724 * 7 (C.D. Cal. Apr. 25, 2011) ("In addition, regardless of whether Defendant received notice of Plaintiff's repurchase request, such notice is not necessary to establish Defendant's repurchase obligation…").

7

representations—rather than re-underwriting or re-verifying the loan data for itself—LBHI did so at its own risk. Remarkably, UAMC is taking the position that Lehman should have never relied on UAMC's representations. But UAMC ignores that UAMC previously acknowledged LBHI's reliance upon UAMC's representations:

> Seller acknowledges that...the Loan [is]…purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties…each of which…relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants, and conditions set forth in the Loan Purchase Agreement and this Seller's Guide. SG § 701.

UAMC's argument—LBHI's sale to a third party has relieved UAMC of its obligations under the parties' contract—turns the contract on its head. The point of the contract was that UAMC, as delegated underwriter, would perform the underwriting function and that LBHI could expressly rely upon UAMC's representations. SG § 701. If the sale upstream of a Loan relieved UAMC of its contractual obligations, surely the contract would have so stated. Contrariwise, the contract expressly contemplated further sale of the loans and survival of LBHI's remedies. *See, e.g.* SG § 712 (stating that Purchaser's remedies shall survive notwithstanding any endorsement of any loan or assignment of any mortgage); § 703(27) (UAMC represented that the Loan was an acceptable investment for other investors); § 711 ("[A]ny subsequent holder of any Note acquired hereunder by Purchaser shall be a third party beneficiary of the [contract]"). UAMC's position, contrasted with the express provisions of the contract, is untenable. UAMC asks this Court to strip the representations of their only value: continuing promise to indemnify LBHI if the facts warranted turned out to be untrue.

### 3. UAMC Misconstrues Causation and Materiality in this Context

UAMC demands a "direct causal relationship between the purported breach and a resulting financial loss" (Resp. p. 13) and asserts that "materiality is entirely lacking" (Resp. p. 12). As addressed above, UAMC's assertion that the sale to Freddie Mac broke any direct causal chain is meritless. Setting aside that LBHI's loss was a direct result of Freddie Mac's demand, based in part on these very breaches (12 month mortgage payment history cited as defect by Freddie Mac), causation is not as rigid under New York law as UAMC would have the Court believe. "[C]ausation is far from a self-defining term, and raises all sorts of questions, such as whether the causation must be direct or indirect, transactional, proximate, risk-related, or whatever." *Assured Guaranty Muni. Corp., v. Flagstar Bank, FSB.* 892 F.Supp.2d 596, 601 (S.D.N.Y. 2012) (Rakoff, J.) (concluding that causation, in the context of the loan representation contract before it, does not require "actual pecuniary loss resulting from a breach" and "If the sophisticated parties had intended that the plaintiff be required to show direct loss causation, they could have included that in the contract, but they did not do so."); see also *Syncora Guarantee Inv. V. EMC Mtg. Corp.*, 874 F.Supp.2d 328 (S.D.N.Y. 2012).

UAMC's claim that LBHI was not legally liable to Freddie Mac and instead indemnified for "political" reasons is unsupported. (Resp. p. 13). LBHI was contractually bound to repurchase or indemnify Freddie Mac upon Freddie demand: "Freddie Mac's decision to require the Seller or Servicer to repurchase a Mortgage **shall be conclusive**. Failure to comply with Freddie Mac's repurchase requirement may result in suspension…or disqualification as a Freddie Mac Seller." Supp. Carrington Decl. Ex. 9 (emphasis added). Where a repurchase demand is at the sole discretion of the

Investor, the Seller is obligated to repurchase. *Residential Funding Co., LLC v. Terrace Mortg.* Co. –F.3d--, 2013 WL 4007552 *3 (8th Cir. 2013) ("The Client Guide gives [plaintiff] sole discretion to determine whether an Event of Default has occurred and [defendant] agreed to buy back the loan if [plaintiff] determined as much. There is nothing ambiguous about this language."). Here, once Freddie Mac decided to require LBHI repurchase or indemnify, LBHI was contractually obligated to do so.

UAMC also alludes to a failure of materiality. But UAMC acknowledged that its representations, including those related to the veracity of the loan application, were "material" to the transaction. SG §701 (quoted above Section III(2) "Loan is purchased in reliance upon [Seller's representations]"). Those representations also included strict compliance with the underwriting and loan program requirements, such as verifying mortgage history and analyzing payment shock. UAMC acknowledged that the Loan was purchased in reliance on these representations. Thus, because the representations were material so too are the breaches. This reasoning has been adopted by other courts. See *LBHI. v. 1st New England Mtg. Corp.*, 2013 WL 3984413, *3-4, 09-11082-GAO (D. Mass. Sept. 12, 2012).

Additionally, the contract required repurchase or indemnification in the event of any breach which "materially *or* adversely affects…the interest of Purchaser…." SG § 710 (emphasis added). UAMC cannot genuinely claim that its breaches, cited by Freddie Mac demanding indemnification, did not adversely affect LBHI's interests.

Alternatively, the contract excluded materiality under these circumstances. Freddie Mac foreclosed on this Loan—a fact that UAMC does not dispute.[6] Because

---

[6] Response to material fact # 26: "…admitted as to the foreclosure."

10

the loan was foreclosed, UAMC was obligated to repurchase the loan or indemnify *regardless* of whether the breaches were material, as set forth at SG § 710:

> [W]ith respect to each Mortgage Loan that is the subject of any breach[7] if Purchaser (or Purchaser's agent or any subsequent owner of the Mortgage Loan) has acquired title to the related Mortgaged Property through foreclosure, deed-in-lieu of foreclosure, abandonment, or reclamation from bankruptcy…then, within thirty (30) days after Purchaser's demand therefor, Seller shall…purchase the Mortgaged Property from Purchaser at a purchase price equal to the Repurchase Price; or…indemnify Purchaser as specified in Section 711. SG § 710.

see also *LBHI v. National Bank of Arkansas*, 875 F.Supp.2d 911, 920 (E.D. Ark. 2012) (citing this provision to find seller required to indemnify after borrower's bankruptcy).

   4. <u>UAMC's Reliance Upon Its Claimed Discretion is Unclear and Misplaced</u>

UAMC claims it had discretion but fails to inform the Court how it was used in this instance or what impact discretion had on UAMC's breaches. (Resp. p. 6). In any event, discretion was squarely addressed by the contract: if the Seller is a delegated underwriter, then the underwriting "shall be in strict compliance with the underwriting guidelines and product descriptions…". SG § 717(1). If the Seller wished to depart from the guidelines, it had to submit a "Loan Parameter Exception Request" found at Section 405 of the Seller's Guide and referred throughout Section 5 as "LPER". *See* SG § 405 at Ex. 2 to Amend. Compl. [Doc # 7]; SG § 500 *et. seq*.

   5. <u>UAMC Misinterprets and Misapplies Case Law</u>

UAMC insists that LBHI's citation of cases are not relevant because they "involv[e] *other* defendants". (Resp. pp. 14-15). UAMC then cites as relevant a string of

---

[7] Note that this contract language omits the modifier "material" as found in other places in the contract. The rules of contract interpretation require that this omission be viewed as intentional, thereby removing the materiality requirement when the loan is foreclosed.

11

cases with other defendants, all of which are inapposite. For example, UAMC cites *LBHI v. Evergreen Moneysource Mortgage Co*, 793 F.Supp.2d 1189 (W.D. Wash. 2011) but fails to inform this Court that *Evergreen* has since been found by a New York court to have been a misapplication of the governing New York law. *ACE Securities Corp., v. DB Structured Products, Inc.*, 965 N.Y.S.2d 844, 848 n.3 (N.Y. Sup. Ct. 2013) ("This court…considers [*Evergreen*] to be a misapplication of New York law."). The court in *LBHI v. Gateway Funding, L.P.*, 2013 WL 1773818 (E.D. Pa. Apr. 25, 2013) found an issue of fact existed regarding whether the defendant had merged with the seller, not a question of factual liability. Similarly, the court in *LBHI v. Direct Mortgage Corp.*, case No. 09-04170 (C.D. Cal. Feb. 23, 2012), denied summary judgment due to questions inapplicable here, such as whether certain claims had already settled.

6. UAMC Cannot Now Shirk the Risk/Responsibility For Which It Contracted

UAMC disputes that the risk of borrower misrepresentations or underwriter non-compliance. (Resp. p. 7-8). Yet, a plain reading of SG § 700 evidences this shift of risk, as found by other federal courts. See, e.g*., LBHI v. 1st New England Mtg. Corp.*, 2013 WL 3984413, *2-3, 09-11082-GAO (D. Mass. Sept. 12, 2012) (finding in favor of LBHI and noting "the repurchase provisions were simply an allocation of a well understood risk."). These types of contracts allocating risk to the seller were customary in the industry. See e.g. *ACE Securities*, 965 N.Y.S.2d at 844 ("The whole point of how the [agreement] was structured was to shift the risk of non-complying loans onto [seller]"); *Sun Trust Mtg Inc. v. Old Second National Bank*, 2012 WL 1656667 *2 (E.D. Va. May 10, 2012) (finding defendant assumed the risk when "as a sophisticated and experienced financial entity, it signed the Agreement. It cannot now shirk the risks and

responsibilities for which it contracted."); *Residential Funding Co., LLC v. Terrace Mortg.* Co. –F.3d--, 2013 WL 4007552 *4 (8th Cir. 2013) ("[W]e emphasize this was a freely negotiated agreement between two sophisticated parties…[defendant] willingly agreed to place itself in this situation…indeed, the agreement served the parties well for many years" even though "the parties' relationship has soured.").

## IV.     **CONCLUSION**

Despite the spirited nature of its Response, UAMC leaves unaddressed many of the central issues and claims raised in LBHI's Motion.  UAMC should not now be allowed to dodge the liability for which it expressly contracted. LBHI respectfully requests this Court grant LBHI's Motion for Partial Summary Judgment.

Respectfully submitted this 2nd day of December, 2013.

        FOSTER GRAHAM
         MILSTEIN & CALISHER, LLP


By: *s/ Christopher P. Carrington*
     Christopher P. Carrington
     360 S. Garfield, 6th Floor
     Denver, CO 80209
     Telephone: 303.333.9810
     Facsimile: 303.333.9786
     Email: carrington@fostergraham.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December 2013, a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** was electronically filed and served via *ECF* as follows:

Marisa C. Ala
Palumbo Bergstrom, LLC
8375 South Willow Street, Suite 300
Lone Tree, Colorado 80124
mala@palumbolawyers.com

Philip R. Stein
Enza Boderone
Bilzin Sumberg Baena Price & Axelrod, LLP
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
PStein@bilzin.com
EBoderone@bilzin.com

*s/ Dyanna Spicher*