**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-CV-00090-PAB-MJW

LEHMAN BROTHERS HOLDINGS, INC.

      Plaintiff,

v.

UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC

      Defendant.
_____

**PLAINTIFF'S RESPONSE TO UNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**
_____

      Plaintiff, Lehman Brothers Holdings, Inc. ("LBHI") hereby submits its Response to Defendant Universal American Mortgage Company's ("UAMC") Motion for Summary Judgment ("Motion") dated November 26, 2013 found at Document 53, as follows:

## I.  <u>INTRODUCTION</u>

      Although the parties' contract expressly excludes conflict of laws rules, such as the borrowing statute, UAMC's Motion fails to provide that contractual language to the Court, presumably in an attempt to elude its prior agreement on this issue. UAMC also ignores that it agreed to include New York law as it pertains to the parties' remedies, and statute of limitations under New York law pertains to a party's remedy. Moreover, the borrowing statute is inapplicable because LBHI's assignor, Lehman Bros. Bank ("LBB"), was a resident of New York at the relevant time. Should this Court utilize the conflict-of-laws rule asserted by UAMC and borrow Delaware law, Delaware law requires use of the forum state's statute of limitations. Under Colorado law, the limitations period is six years. Thus, whether under New York law, as required by the

contract, or under Delaware then Colorado law, as requested by UAMC, the limitations period is six years. In any event, the claim did not accrue until LBHI indemnified a third-party, which occurred within even three years of the filing of the relevant lawsuit. Thus, LBHI's claim is timely under either a six or three year analysis.

## II. RESPONSE TO UAMC'S MATERIAL FACTS

1. Admitted to the extent "home office" is not equivalent to LBB's principal place of business but, instead, is the federal savings bank equivalent to a location of incorporation as required by the Office of Thrift Supervision.

3. Denied as to UAMC's confusing of terms "main office" and "home office." LBB's "home office" was in Delaware. LBB's place of business was New York, set forth herein.

4. Denied as to relevance of Boderone Decl. Ex. E, a document dated well after the relevant time period, including after Lehman's bankruptcy filed September 15, 2008.

5. Denied as to UAMC's confusing of terms "main office" and "home office" but admitted that LBB's Executive Office was in New York, as set out in UAMC's own Exhibit F to Boderone Declaration.

11. Admitted. **NOTE**: In UAMC's Opposition [Doc. 48] to LBHI's Motion for Partial Summary Judgment, UAMC disputed that LBHI sold the Loan to Freddie Mac (UAMC Opposition Response to SMF ¶¶ 11, 26). UAMC now admits this fact. UAMC should be estopped in its Opposition [Doc. 48] from arguing to the contrary.

12. Denied to extent this mischaracterizes that LBHI, in selling the Loan to Freddie Mac, expressly relied upon UAMC's representations about the quality of the Loan and the underwriting, as set forth herein and in LBHI's Reply [Doc. 55] in support of LBHI's Motion for Partial Summary Judgment ("LBHI's Reply").

15.  Admitted that LBHI indemnified Freddie Mac on August 7, 2008.

16.  Denied to extent UAMC suggests LBHI's indemnification was voluntary when it was, instead, pursuant to LBHI's contractual obligation to Freddie Mac, as set forth below and as fully briefed at pages 9-10 of LBHI's Reply [Doc. 55].

## III. ARGUMENT

UAMC's Motion raises several issues that are often intermingled.  In an effort to add clarity to the issues raised, this Response will be broken into three parts.  Part A will address the applicable limitations period; Part B will address the date on which the claims accrued; and Part C will address UAMC's indemnification arguments to the extent not addressed in prior briefings.  Also, as a preliminary matter, the operative filing date of LBHI's claims is **March 11, 2011** (for statute of limitations purposes, the date relates back to the Florida Action)[1].

### PART A:  THE APPLICABLE LIMITATIONS PERIOD IS SIX YEARS

The parties' contract excluded New York's borrowing statute and included New York's limitations period, which is six years.[2]  What's more, LBHI's assignor, Lehman Brothers Bank ("LBB"), was a resident of New York at the relevant time and, therefore, the borrowing statute is inapplicable and New York law applies, regardless of how the Court interprets the parties' contract.   Alternatively, should the Court utilize the borrowing statute as requested by UAMC, the Court must look to Delaware law to determine the applicable statute of limitations, and Delaware law requires the Court look

---

[1] As ordered by Judge King in his Order Severing Claims, "The date of the filing of any of these complaints will relate back to the filing of Plaintiff's original Complaint filed March 11, 2011."  Carrington Declaration, Ex. 1, Case No. 1:11-cv-20859-JLK, p. 2 of 3 (January 9, 2013).
[2] CPLR § 213(2).

to the forum state (giving rise to "the dreaded *renvoi*"). Under Colorado law, the limitations period is six years pursuant to both Colorado's six year limitations period for damages determinable by formula and Colorado's Uniform Conflict of Laws.

**1.      The Parties' Contract *Excludes* the Borrowing Statute**

As an initial matter, UAMC's Motion (at page 7) omits the choice of law provision set forth at § 713.1 of the Seller's Guide ("SG")[3] that <u>excludes</u> New York's conflict of laws rules, presumably because such exclusion is fatal to UAMC's position.

In both New York and Colorado, the determination of the applicable limitations period, including related rules such as the borrowing statute, is a conflict-of-laws question. *See, e.g., In re Agent Orange Prod. Liab. Litig.,* 597 F.Supp. 740, 810 (E.D.N.Y. 1984) *aff'd sub nom.* 818 F.2d 145 (2d. Cir. 1987) (noting that the borrowing statute is a "special ***conflict of laws*** provision applicable to causes of action accruing without the state…") (emphasis added); *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1219 (10th Cir. 1997); *Vandeventer v. Four Corners Elec. Co., Inc.,* 663 F.2d 1016 (10th Cir. 1981) (determining whether New Mexico or Colorado limitations period applies, "our sole task [ ] is to determine whether, in the often inscrutable area of conflict of laws, the trial court chose to apply the laws of the [ ] correct state."); *see also*, C.R.S. § 13-82-103 (Colorado's Uniform *Conflict of Laws*, addressing applicable state limitations period).

The parties' agreed New York law applies without regard to conflict-of-laws rules:

> The Loan Purchase Agreement shall be construed in accordance with the substantive law of the State of New York…***without regard for the principles of conflict of laws***. SG § 713.1, Ex. 2, part 2 to Am. Compl. [Doc. # 7-3] (emphasis added).

---

[3] The Seller's Guide was incorporated as a part of the parties' contract.  (Am. Compl., Ex. 1 § 2) [Doc. 7-1].

As such, the Court should not apply the borrowing statute, a conflict of laws principle, in construing the parties' contract.

In fact, as a matter of law, a choice-of-law provision incorporating New York law impliedly excludes New York's conflict-of-laws rules; an express exclusion is not even necessary. *IRB-Brasil Resseguros, S.A. v. Inepar Investments, S.A.*, 982 N.E.2d 609, 612 (N.Y. 2012) (citing Restatement (Second) of Conflict of Laws § 187(3) and §4) ("[I]n the absence of a contrary indication of intention, the reference [to the choice of law] is to the local law of [that] state" and "local law is defined as the body of standards, principles and rules, *exclusive* of its rules of Conflict of Laws"). In *IRB-Brasil Resseguros*, the New York Court of Appeals analyzed New York General Obligations Law § 5-1401 to determine whether a conflict-of-laws analysis must be undertaken when there is an express choice of New York law:

> To find here…that courts must engage in a conflict-of-laws analysis despite the parties' plainly expressed desire to apply New York law would frustrate the…purpose…of a predictable contractual choice of New York commercial law and, crucially, of eliminating uncertainty regarding the governing law…It strains credulity that the parties [with a choice of law provision]…would have desired a court to engage in a complicated conflict-of-laws analysis, delaying resolution of any dispute and increasing litigation expenses.

*Id.* at 612.

Consistent with the New York Court of Appeals' clear directive, this Court should decline a complicated conflict-of-laws exercise and find that where there is a choice of law provision, the borrowing statute is inapplicable pursuant to New York General Obligations Law § 5-1401 and the holding in *IRB-Brasil Resseguros.*

UAMC—realizing that if the borrowing statute is a conflict of laws rule then it is inapplicable—anticipates this position by claiming the borrowing statute is not a conflict of laws principle.  But UAMC cannot rebut the cases cited above.  Instead, UAMC cites cases explaining that the borrowing statute is not a *choice of law* principle.  (Motion p. 8). UAMC relies on *Global Financial Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999) for support that "the borrowing statute is not a 'choice of law' question." (Motion p. 8). But the dispositive question is not whether the borrowing statute is a choice of law question but whether it is a *conflict of law* principle; the law is settled in the affirmative.

UAMC states that "New York courts have expressly rejected the notion that section 202 is a conflict of laws principle" (Motion, p. 8) and yet, *Global*, the case upon which UAMC relies for this proposition, does not use the phrase "conflict of laws" even once.  Instead, the issue before the court in *Global* was "where does a nonresident's contract claim accrue…?" *Global Financial*, 93 N.Y.2d at 526. The plaintiff in *Global* used choice of law cases to interpret the word "accrue" found in CPLR 202 (borrowing statute), to which the court responded that "accrue" should be given its "generally accepted construction" and that the choice of law cases cited by Plaintiff did not apply. *Id.* at 528.  UAMC's Motion distorts this brief discussion in *Global*.

UAMC also extracts dicta out of context from *Ledwith v. Sears Roebuck & Co., Inc.*, 231 A.D.2d 17, 24 (N.Y. App. Div. 1997).  The issue in *Ledwith* (on a motion to dismiss and having no contract that excluded conflict of laws) was whether one plaintiff can impute her New York residency to another non-resident plaintiff so that the non-resident could circumvent CPLR 202.  *Id.* at 23. That issue is not before this Court. Also, the holding cited by UAMC is out of context: the *Ledwith* court refused to entertain

a conflict-of-laws analysis regarding Oregon's statute of repose for product liability versus Oregon's statute of limitations, finding instead that when borrowing another state's law the court borrowed all of that state's law with regard to limitations, including Oregon's statute of repose. *Id.* at 24. None of these issues are relevant here. UAMC's remaining cases are similarly inapt, none of which address contracts where the parties have excluded conflict of laws. Moreover, UAMC fails to explain how these cases are controlling in light of the New York Court of Appeals' holding in 2012 in *IRB-Brasil* that squarely rejects UAMC's constrained interpretation. The borrowing statute is a conflict of laws principle and therefore was excluded by the parties' contract.

**2.     The Contract *Includes* New York's Statute of Limitations**

In New York, statutes of limitation are questions pertaining to the parties' remedies rather than their substantive rights. *Tanges v. Heidelberg North America, Inc.*, 710 N.E.2d 250, 253 (N.Y. 1999) ("[T]he passing of the applicable period does not wipe out the substantive right; it merely suspends the remedy.") (quoting Siegel, N.Y. Prac. § 34, at 38 (2d ed.). "[T]he statute of limitations precludes a remedy, it does not extinguish the…underlying substantive right…" *In re Hess*, 404 B.R. 747, 749 (S.D.N.Y. 2009).

Not only does the parties' contract exclude conflict-of-laws principles, it expressly *includes* New York's "remedies":

> The Loan Purchase Agreement shall be construed in accordance with the substantive law of the state of New York and the…*remedies of the parties hereunder shall be determined in accordance with such law.* SG § 713.1 (emphasis added).

Here, the Contract's chosen law includes more than just New York substantive law; it also includes that the parties' remedies shall be determined in accordance with

New York law. Statute of limitations is a question about a party's remedy. New York's statute of limitations is applicable here.

### 3.    Lehman Brothers Bank Was a Resident of New York at the Relevant Time

New York's borrowing statute *does not* apply to New York *residents*: "…where the cause of action accrued in favor of a resident of the state, the time limited by the laws of the state shall apply." CPLR § 202. Thus, if LBB was a resident of New York at the relevant time, the borrowing statute is inapplicable. Anticipating this fatal fact, UAMC asserts LBB had only one residence, Delaware. (Motion, p. 9-11). UAMC's position has been squarely rejected: For purposes of CPLR § 202, an entity is not limited to its home office or place of incorporation and, instead, can have more than one residence. *In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, 834 F.Supp.2d 949, 952-58 (C.D.Cal. 2012).

The issue in *Countrywide Financial* was similar to that raised by UAMC here: whether a plaintiff with a principal place of business in New York but incorporated in Delaware could be a "resident" of New York for purposes of New York's borrowing statue. *Id.* at 954. The court found in the affirmative, holding that an entity "may have more than one residence" and "the test for whether a person is a New York resident for purposes of CPLR § 202 is whether he has 'a significant connection with some locality in the State.'" *Id.* at 952-58 quoting *Antone v. General Motors Corp.*, 64 N.Y.2d 20, 30 (1984). The court, driven by "the purpose of the borrowing statute: to prevent foreign claimants from flooding New York courts to take advantage of New York's favorable limitations period", found that such purpose is not served where a "person has…a significant connection with the state" because that person does not "come into New

York to take advantage of its laws, the person is already there." *Id.* at 957-58. The fact that plaintiff "is a multinational corporation does not change that analysis." *Id.* at 958. Other courts have followed suit.[4]

Setting aside the contractual language, the dispositive question is whether LBB had a significant connection to New York at the time the Loan was sold by UAMC to LBB (June 19, 2006). If so, LBB was a New York resident and the borrowing statute is inapplicable. As evidenced by affidavits filed by LBB's successor entity[5], LBB indeed maintained a principal place of business in New York: (1) LBB's executive officers and management were located at 745 7th Avenue, New York, NY, from where such executive officers directed, controlled, and coordinated LBB's activities; (2) LBB's board of directors met in New York; (3) regulatory examinations were conducted in New York; (4) LBB's Chief Financial Officer, who oversaw LBB's losses, was located in New York. (Korell Affidavit, ¶¶ 2-7). Also, because LBB's financial accounts were primarily maintained from New York, the place of injury is New York.[6] UAMC's own exhibits even support New York residency. (Boderone Ex. F: Executive Offices in New York, NY).

---

[4]    "[A] corporation with a principal place of business in New York is a resident of New York for purposes of CPLR § 202", in which case "CPLR § 202…does not apply." *Dexia Holdings, Inc. et. al. v.. Countrywide Financial Corp. et. al.*, 2012 WL 2161498, No. 11-cv-07165 MRP (MANx) (C.D. Cal. June 1, 2012).

[5]    *See* Carrington Decl. **Exhibit 2**. LBHI relies upon the affidavit of Steve Korell, former in-house counsel to Aurora Commercial Corp, successor entity to Aurora Bank FSB f/k/a Lehman Bros. Bank FSB, filed in case no. 12-cv-03138-WJM-KLM pertaining to this very issue. Mr. Korell recently resigned from Aurora Commercial Corp. and was therefore unable to provide another affidavit in time for filing.

[6] See e.g. *Lang v. Paine, Webber, Jackson & Curtis*, 582 F.Supp. 800, 882 (D.C.N.Y. 1977) (plaintiff felt injury in Massachusetts where financial accounts maintained).

In fact, based upon these factors, a case cited by UAMC made the very observation UAMC seeks to avoid: New York was LBB's principal place of business under the "ordinary meaning" of commercial domicile.

> Under that definition, the Bank's commercial domicile would be New York, because the Bank's executive officers are employed in New York, its board of directors meets exclusively in New York, its regulatory examinations are conducted in New York, and most of its mortgage-related decisions are made in New York.

*Lehman Bros. Bank, FSB v. State Bank Com'r*, 937 A.2d 95, 103 (Del. 2007) (finding that "principal office" as used in the franchise tax statute was not to be given its ordinary meaning and, instead, was a term of art that had a peculiar meaning when used in a statute imposing a tax and finding LBB's "principal office" was in Delaware for taxation).

Undaunted by *Countrywide Financial* or *State Bank*'s limited application, UAMC's recycles the argument asserted by the taxing authority in *State Bank* in an effort to restrict LBB's residence to just one location. Relying upon a regulation issued solely to determine the district for bank membership, UAMC claims that the definition of "principal place of business" under 12 C.F.R. § 1263.18(b) is controlling. UAMC is mistaken. Section 1263.18 is entitled "Determination of appropriate Bank district for membership" and its definition of principal place of business is a term of art used to determine the district in which a bank resides. By contrast, the term "resident" in New York's borrowing statute is not a term of art and, moreover, this question has been addressed by the courts. *Countrywide Financial*, 834 F.Supp.2d 949, 952-58 (C.D.Cal. 2012).

Even under Delaware law, if a word is not a term of art then the ordinary understanding should be used. *See Price v. State*, 2010 WL 1223792 (Del. Super. March 22, 2010) (unpublished) (citing *Lehman Bros. Bank, FSB v. State Bank Com'r*,

937 A.2d 95 (Del. 2007) (for the proposition that when a word "is not defined by the statute[,] [] it is not a term of art[,] [and] it retains its ordinary dictionary meaning."). UAMC cannot further its cause by plucking terms of art from irrelevant regulations and utilizing those terms out of context. Because LBB was a resident of New York at the relevant time, the borrowing statute is inapplicable.

**4.    Application of the Borrowing Statute Here Results in *Renvoi***

Notwithstanding the plain language of the contract and ignoring LBB's residency, if this Court applies New York's borrowing statute and looks to Delaware, it must adopt all of Delaware's law with regard to statute of limitations. "Where the [borrowing statute] causes another state's statute to be borrowed, that state's statute and the interpretations given its tolling and other provisions will be applied as a total package." *In re Agent Orange Prod. Liab. Litig.,* 597 F.Supp. 740, 810 (E.D.N.Y. 1984). Delaware law requires the use of the *forum state's* limitations period. See, e.g. *American Energy Technologies, Inc. v. Colley & McCoy, Co.* 1999 WL 301648, *2, no. CIV. A. 98-398 MMS (D. Del. Apr. 15 1999); *In re Winstar Communications Inc.*, 435 B.R. 33, 45 (Bankr. D. Del. 2010). As such, the Court must look to Colorado law. Because Colorado recognizes choice-of law provisions[7] and has adopted the Uniform Conflict of Laws (*infra*), the Court will be required to look back to New York, which will then send the Court again to Delaware then to Colorado and so on.

This circuital chasing of the law results in a never-ending cycle known as *renvoi*.[8] New York has rejected the application of conflict of laws where such application results in *renvoi*. *Weiss v. La Suisse*, 313 F.Supp. 2d 241 (S.D.N.Y. 2004) ("Under NY law, the

---

[7] *See, e.g.*, *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. Ct. App. 1994).
[8] Renvoi is a French word defined as "send back" or "to return unopened."

court ignores the conflicts of laws of another jurisdiction, and imports only the substantive law, so as to avoid the dreaded renvoi."). Similarly, the 10th Circuit seeks to avoid *renvoi*. *Amoco Rockmount Co. v. Anschutz Corp.*, 7 F.3d 909, 920 (10th Cir. 1993) (finding that the district court erred in applying Colorado's conflict-of-laws to determine prejudgment interest rules where the choice-of-law directed the forum state to Colorado). "This maneuver, known as renvoi, is appropriate only in limited circumstances."[9] *Id.* As such, this Court should ignore conflicts of laws principles that create *renvoi*, such as the borrowing statute. Alternatively, should this Court employ the New York borrowing statute, thereby arriving at Colorado law via Delaware, the Court should close the *renvoi* loop at that point and look to Colorado internal law.

**5.     If Colorado Law Applies, the Statute of Limitations is Six Years**

Here, Colorado's statute of limitations is six years because LBHI is seeking damages determinable by reference to a contractual formula. Alternatively, Colorado's Uniform Conflict of Laws requires this Court use the parties' chosen law (New York) to determine the limitations period. In either scenario, the statute of limitations is six years.

a.     <u>Limitations Period is Six Years When Claim Seeks a Determinable Sum</u>

Colorado's statute of limitations for this dispute is six years because the lawsuit is an action to recover an unliquidated but determinable amount of money. C.R.S. § 13-80-103.5(1)(a) ("All actions to recover a liquidated debt or an unliquidated, determinable amount of money…[are subject to a six year limitations period]"). In Colorado, while contract actions generally are subject to a three-year statute of limitations, "[i]f a

---

[9] These limited circumstances generally include only two types of disputes where a choice-of-law provision impliedly includes the chosen state's conflict of laws rules: cases involving land title or the validity of divorce decrees. Rest. 1st Confl. § 8.

contract is for a 'liquidated debt' or for an 'unliquidated, determinable amount,' however, it falls under the six-year statute of limitations provided by section 13-80-103.5(1)(a)." *Portercare Adventist Health Sys. v. Lego*, 286 P.3d 525, 528 (Colo. 2012). To determine whether the three- or six-year statute of limitations applies to a breach-of-contract claim, Colorado courts ask whether "the amount owed is ascertainable either by reference to the agreement, or by simple computation using extrinsic evidence." *See Portercare Adventist*, 286 P.3d at 526.

Here, the measure of damages for a breach is set forth by the contract as the "Repurchase Price". SG §§ 710 ("Seller shall…repurchase the related Mortgage Loan at the Repurchase Price"). Repurchase Price is a defined term that sets out a formula for the amount the Seller must pay in the event of a breach of a representation:

```
An amount equal to (I) the greater of the Purchase Price
or par multiplied by the outstanding principal balance
of the Mortgage Loan as of the Purchase Date; less (ii)
the aggregate amount received by Purchaser of reductions
and curtailments of the principal balance of the
Mortgage Note; plus (iii) any and all interest payable
on the outstanding principal balance of the Mortgage
Note as of the date of repurchase; plus (iv) any and all
expenses, including, without limitation, costs of
foreclosure and reasonable attorney's fees, incurred by
Purchaser in the exercise by Purchaser of its rights and
remedies in connection with the Mortgage Loan, the
Mortgaged Property, and/or the Mortgagor…
```

Am. Compl. Ex. 2, part 2 (Seller's Guide, § 8) [Doc. 7-3, page 53]. LBHI's claim is for a determinable amount of money and, therefore, the statute of limitations is six years per C.R.S. § 13-80-103.5(1)(a).

Based on the above contractual definition, there can be no dispute between the parties regarding the method of calculation for the amount of damages LBHI will recover should it prevail. Indeed, numerous courts have applied the same formula governing LBHI correspondent lender cases because the formula provides an "evidentiary basis

for [LBHI's] claimed damages" and that extrinsic evidence "explains the sources of the other figures" in the repurchase price formula. *LBHI v. PMC Bancorp*, No. LA CV 10-07207 JAK, 2013 WL 1095458, at *10-*11 (C.D. Cal. Mar. 8, 2013) (granting LBHI summary judgment and awarding it damages on similar contractual repurchase price formula); *LBHI v. Cal. Fin. Grp., Inc.*, No. SACV 09-0666 AG, 2011 WL 4375724, at *7 (C.D. Cal. Apr. 25, 2011) (granting LBHI summary judgment as to liability and damages and stating that "[u]sing this formula, the Court now determines the damages under each loan"); *LBHI v. Pine State Mortg. Corp.*, No. 1:09-cv-01596-SCJ, 2012 WL 1606227, at *6 (N.D. Ga. Apr. 23, 2012) (granting LBHI summary judgment as to liability and damages and stating "[t]he method for calculating LBHI's damages are set forth in the Seller's Guide and are not subject to dispute").[10]

Even if the parties dispute the amounts of one of the inputs to the formula—say, how much LBHI spent in expenses in order to foreclose on the subject property—the formula is still indisputable, and thus a six year statute of limitations applies. *See Interbank Invs., LLC v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 (Colo. App. 2000) (holding that an amount is considered to be "determinable" for purposes of § 13-80-103.5 if an agreement sets forth a method for determining the amount due, even where there is a dispute about the inputs into such formula) (citations omitted).

---

[10] *See also, e.g.*, *Lehman Bros. Holdings, Inc. v. Valley Vista Mortg.*, No. 3:11-cv-00213 AJB (JMA), 2011 WL 2693509, at *1-*2 (S.D. Cal. July 11, 2011) (granting default judgment and finding that LBHI "seeks a sum-certain amount" using similar contractual repurchase price formula; stating that the formula is "the most reasonable method for reaching an amount"); *Lehman Bros. Holdings, Inc. v. Bayporte Enters., Inc.*, No. C 11-0961-CW (MEJ), 2011 WL 6141079, at *8-*9 (N.D. Cal. Oct. 7, 2011) (granting default judgment and awarding damages based on similar repurchase price formula; stating "[i]n calculating the damages, [LBHI's affiant] used a formula based on the Repurchase Price definition above and filled in the variable with information taken from LBB, LBHI, and Aurora's business records").

Finally, if the Court finds that both Colorado's limitation for general contract actions of three years and its six-year limitation for contract claims seeking determinable sums are arguably applicable, then the longer period of limits should prevail. *Dawson v. Reider*, 872 P.2d 212, 214 (Colo. 1994) (stating "because statutes of limitations are in derogation of a presumptively valid claim, a longer period of limitations should prevail where two statutes are arguably applicable") (citation omitted).

       b.     <u>Uniform Conflict of Laws Adopts the Chosen Law's Limitations Period</u>

Alternatively, if UAMC is correct that the Seller's Guide's choice-of-law provision does not require New York's statute of limitations, the Court must still undertake a choice-of-law analysis, which again leads back to New York law's statute of limitations.

A Federal court sitting in diversity applies "the choice of law principles of the state in which it sits." *Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1085, 1077 n.12 (10th Cir. 2008). Colorado has adopted the Uniform Conflict of Laws, which states "if a claim is substantively based…upon the law of one other state, the limitation period of that state applies… ." C.R.S. § 13-82-104(1)(a); see *Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 241 (Colo. 2009) (discussing C.R.S. § 13-82-104 and stating that the Colorado "limitations act imposes different statutes of limitations depending on the substantive law underlying a claim. That is, if a claim is based on another jurisdiction's substantive law, that jurisdiction's statute of limitations applies.").

LBHI's claims are based on the substantive state law of New York. Accordingly, Colorado law mandates that New York law applies. *See, e.g.*, *Iskowitz v. Cessna*

*Aircraft Co.*, 2009 WL 3162016[11] (D. Colo. Sept. 30, 2009) (Kansas's statute of limitations law applied by operation of C.R.S. § 13-82-104(1)(a) where claims were based on Kansas law). As New York law applies, so too does New York's six-year statute of limitations. *See* N.Y.C.P.L.R. § 213.

## PART A: Conclusion

Not only is UAMC's conflict-of-laws provision—borrowing statute—excluded by the parties' contract, New York's remedies, such as statute of limitations, is included by the contract. Notwithstanding the express contractual language, the borrowing statute is inapplicable because LBB was a New York resident at the relevant time. Moreover, utilization of the borrowing statute would result in *renvoi*. Or, should the Court employ Colorado law, the limitations period is six years. Thus, even accepting UAMC's claim that the breach occurred at the loan's sale, December 30, 2005[12]—with which LBHI disagrees (*infra*)—the claim was timely filed within six years, on March 11, 2011.

## PART B: CLAIM ACCRUAL DATE

If the Court finds the limitations period is six years, the Court need look no further at the claim accrual date because even under UAMC's proffered accrual date, the claim was timely filed within six years. If, however, the Court determines that the limitations period is three years, then an accrual date analysis is required. UAMC asserts LBHI's claim accrued in "June 2006" when the "sale indisputably occurred." (Motion p. 14). It is unclear where UAMC obtained this date. The Loan was sold by UAMC to LBB on

---

[11] Nos. 07–cv–00968–REB–CBS, 07–cv–00971–REB–CBS, 07–cv–01087–REB–CBS, 08–cv–02298–REB–CBS, 08–cv–02437–REB–CBS, 09–cv–00835–REB–CBS, 09–cv–01145–REB–CBS

[12] *See* LBHI Motion for Partial Summary Judgment SMF ¶ 8 [Doc. 47].

December 30, 2005. In any case, UAMC is mistaken; the claim accrued, at the earliest, on the date LBHI indemnified Freddie Mac: August 7, 2008.

UAMC also ignores that its failure to repurchase or indemnify upon demand is an independent breach of the contract. As such, LBHI's claims are timely even within UAMC's requested three-year statute of limitations.

**1.    LBHI's Claim Did Not Accrue Until LBHI Indemnified Freddie Mac**

New York courts have consistently held that claims for indemnification of third parties do not accrue until, at the earliest, the third-party claim is paid. *See McDermott v. City of New York*, 406 N.E.2d 460, 462-63 (N.Y. 1980); *see also Tedesco v. A.P. Green Industries, Inc.*, 864 N.E.2d 65, 67 (N.Y. 2007). This is true even if the underlying action (such as a claim for breach of seller's representations or warranties) is barred by the expiration of a statute of limitations. *See McDermott*, 406 N.E.2d at 462-63; *City of New York v. Lead Industry Ass'n*, 222 A.D.2d 119, 127 (N.Y. App. Div. 1996); *Fisher v. Preston*, 251 A.D.2d 843, 844 (N.Y. App. Div. 1998) ("we find no merit to the contention that dismissal of the underlying causes of actions on Statute of Limitations grounds warrants the dismissal of all claims seeking indemnification…").[13]

Applying New York law, LBHI's claims as to the Loan did not accrue until, at the earliest, LBHI indemnified Freddie Mac on August 7, 2008. (UAMC SMF ¶ 15; LBHI Motion for Partial Summary Judgment, Baker Decl. ¶ 20 [Doc. 47]). LBHI's claim, filed March 11, 2011, was timely under either a three or six year limitation period.

---

[13] Even *LBHI v. Evergreen Moneysource*, a case upon which UAMC relies, notes that if damages are caused by an indemnification payment to a third-party then the claim for contractual indemnity does not accrue until, at the earliest, payment of the third-party claim. 793 F.Supp.2d 1189, 1194, n.2 (W.D.Wash. 2011).

## 2.    Failure to Comply With Demand Is Independent Breach of the Agreement

The failure to repurchase and/or indemnify upon demand is a breach independent and separate from the breach that occurs as a result of misrepresentations and underwriting violations and, therefore, an action for failure to repurchase or indemnify must be filed within the applicable limitations period from the date the demand is complete. See, *LBHI v. National Bank of Arkansas*, 875 F.Supp.2d 911, 917-18 (E.D. Ark. 2012); see also *LBHI v. PMC Bancorp*, 2013 WL 1095458, *10 (C.D. Cal. 2013); *Deutsche Alt-A Securities v. DB Structured Products, Inc*, -- F.Supp.2d--, 2013 WL 3863861, *10 (S.D.N.Y. July 24, 2013) (recognizing that the LBHI contract "allow[s] plaintiff to pursue general contract remedies for a loan seller's failure to repurchase **upon demand**…") (emphasis added); *LaSalle Bank N.A. v. LBHI*, 237 F. Supp. 2d 618, 628 (D.Md. 2002) ("Under New York law, a loan seller's failure to honor its contractual obligation to repurchase a non-conforming loan upon demand is an independent breach of the contract entitling plaintiff to pursue general contractual remedies for breach of contract") (citing *Res. Trust Corp v. Key Fin. Servs., Inc.*, 280 F.3d 12 (1st Cir. 2002).[14]

Although UAMC does not address the cases referenced above, UAMC continues to assert that a breach occurred only when UAMC sold the Loan to LBB (Motion p. 14). Although New York law applies here, UAMC relies upon a non-binding case interpreting Delaware law: *Central Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings*, 2012 WL 3201139, *17 (Del. Ch., Aug. 7, 2012). *Central Mortgage* is factually and legally

---

[14] See also, *Lehman Bros. Holdings Inc. v. Key Fin. Corp.*, No. 8:09-CV-623-T-17EAJ, 2011 WL 1296731, at *11 (M.D. Fla. Mar. 31, 2011) (applying New York law); *Suntrust Mortg., Inc. v. Sharpe Mortg. Lending Servs. of Ga., Inc.*, No. 3:11CV576, 2011 WL 6178221, at *5 (E.D. Va. Dec. 12, 2011) (applying New York law); *Mortg. Guar. Trust Co. of. N.Y. v. Bay View Franchise Mortg.*, No. 00 CIV. 8613, 2002 WL 818082, at *4-5 (S.D.N.Y. Apr. 30, 2002) (applying New York law); *F.D.I.C. v. Key Fin. Servs., Inc.*, No. 89-2366, 1999 WL 34866812 at *12 (D.Mass. Dec. 23, 1999) (applying New York law).

distinct.[15] In *Central Mortgage*, the court found that plaintiff "represented that it in fact had looked at the loan files and performed its own necessary due diligence." *Id.* at *4. Relying upon plaintiff's representation, the court applied Delaware's discovery rule and concluded that the statute of limitations began to run when the plaintiff examined the files, which as represented by plaintiff was when the servicing rights were transferred to plaintiff. *Id.* at 31. The contract here is materially distinct in that LBHI's assignor, LBB, had no such obligation to examine the Loan file; to the contrary, the contract expressly carved out any such obligation, making clear (1) LBB was ***relying*** upon UAMC's representations[16] and (2) LBB was under no obligation to examine the Loan file.[17]

UAMC also cites *LBHI v. Evergreen Moneysource Mortg. Co.*[18] to support its position that the claim accrues at time of sale. Not only have federal courts across the country reached the opposite conclusion, a New York court applying New York law has since found *Evergreen* to be a misapplication of New York law. *ACE Securities Corp.,*

---

[15] The plaintiff, a loan servicer, was litigating an agreement for the loan servicing rights sold to plaintiff by Morgan Stanley, under which both plaintiff and Morgan Stanley had an obligation to indemnify Freddie Mac but plaintiff had no right to seek indemnification from the seller of the servicing rights, Morgan Stanley. *Id.* at *6-7. The analogous situation here would be if Aurora Loan Servicing had indemnified Freddie Mac for this Loan and then sued LBHI. Also, the parties stipulated that that Delaware's statute of limitations applies.

[16] "Seller acknowledges that...the Loan [is]...purchased in reliance upon: (i) the truth and accuracy of Seller's representations...and (ii) Seller's compliance...". SG § 701

[17] "Failure of Purchaser to review or discover any deficiency or error in a Mortgage Loan File will not release Seller from its obligations...nor will it prevent or inhibit Purchaser's exercise of any of its remedies..." SG § 600.5; "...Purchaser's remedies for breach...will continue...notwithstanding...failure to examine any related Mortgage Loan File by Purchaser." SG § 712; "...Purchaser's rights in connection with Seller's representations, warranties and covenants...are not affected by any investigation or review made by, or on behalf of, Purchaser..." SG § 701; "[F]ailure of Purchaser to review or discover any deficiency or error in the Mortgage Loan at the time of Purchase...will neither release Seller from its obligations...nor will it prevent or inhibit Purchaser's exercise of any of its remedies." SG § 717.

[18] 793 F.Supp.2d 1189 (W.D. Wash. 2011).

*v. DB Structured Products, Inc.*, 965 N.Y.S.2d 844, 848 n.3 (N.Y. Sup. Ct. 2013) ("This court also considers [*Evergreen*] to be a misapplication of New York law.")[19]

Just like UAMC, *Evergreen* missed nuanced points of New York law. Though it is true that a plaintiff need not *discover* a breach to commence running of the statute of limitations under New York law, the analysis does not end there. First, where a demand precedes a claim, the time within which the action must be commenced for failure to comply with the demand shall be computed from when that demand is complete. CPLR 206(a); *ACE Securities*, 965 N.Y.S.2d at 847; see also, *Parker v. Town of Clarkson*, 217 A.D.2d 607, 608 (2d Dept. 1995). "Where a contract provides for a continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously and plaintiffs may assert claims for damages occurring up to six years prior to filing suit." *ACE Securities,* 965 N.Y.S. 2d at 847. (citations omitted). As applied here, where UAMC must comply with a demand for repurchase/indemnification within 30 days of notice, each failure to comply with such demand begins the statute anew with respect to that failure, an independent breach.

*ACE Securities* rejects the notion that if the breach existed at the time of sale then that is when the clock began to run. *Id.* at 848. Instead, a plaintiff has no claim for the defendant's refusal to repurchase/indemnify until the plaintiff asks the defendant to do so and the defendant refuses; so long as the demand is made in a reasonable amount of time, plaintiff's claim cannot accrue until the demand is complete (when

---

[19] UAMC may respond that *ACE Securities* has been disputed *by Deutsche Alt-A Securities v. DB Structured Products, Inc*, --F.Supp.2d--, 2013 WL 3863861 (S.D.N.Y. July 24, 2013). A close reading of *Deutsche*, however, demonstrates that its holding is only applicable to contracts with "sole remedy" provisions and specifically inapplicable to the LBHI contracts. *Id.* at *10.

notice is provided and the cure period lapses (the "Repurchase Protocol")). *Id.* Indeed, if the breach accrued at day of sale, as UAMC claims, and LBHI filed a lawsuit against UAMC that same day, UAMC would have surely cried foul and demanded, at least, that it be afforded 30 days (or more) to repurchase per the Repurchase Protocol (SG § 710).

Also, Section 712 of the Seller's Guide makes clear that UAMC's obligations exist "notwithstanding…examination of or failure to examine any related Mortgage Loan File by Purchaser." SG § 712, Am. Compl., Ex. 2 [Doc. 7-3]. Thus, the risk that these loans contained defects or defaulted early was shouldered by the Seller of the loans (UAMC), not Purchaser: "The repurchase provisions were simply an allocation of a well understood risk". *LBHI v. 1st New England Mortgage Corporation*, 2013 WL 3984413, *3, 09-11082-GAO, (D. Mass. Sept. 12, 2012); *see also, ACE Securities*, 965 N.Y.S. 2d at 849 ("The whole point of how the [Agreement] was structured was to shift the risk of non-complying loans onto [defendant].") Consequently, to contend, as UAMC does here, that LBHI's claims accrued on the date of sale because LBHI could have made a demand at that time "utterly belies the parties' relationship and turns the [Agreement] on its head." *ACE Securities*, 965 N.Y.S. 2d at 849. If this were the case, the Agreement—which includes a demand process and cure period (SG § 710) and involves loans with a 30 year term—could have stated that repurchase lawsuits can only be filed within six years of the sale of the loan. But "it is highly peculiar that the [contract] would leave out an effective 6-year statute of repose if such a limitations period were actually contemplated by the parties." *Id.* Furthermore, if such a limitations period existed, LBB would have an implied duty to conduct constant due diligence on the veracity of the representations to ensure that misrepresentations are ferreted out before the repose

period expired.  Such a duty, however, is squarely at odds with the various sections of the Seller's Guide that exclude any such obligation by Purchaser LBB.

*ACE Securities* concluded, like several other courts before it, that the Seller of the loan has a "recurring obligation" and an independent duty under the contract to follow the Repurchase Protocol when informed of a problem with a representation. *Id.* The Seller commits "an independent breach of the [contract] each time it fails to abide by and fulfill its obligations under the Repurchase Protocol. *Id.*

So, *in addition to* the claim that accrued at the time of the third-party indemnification on August 7, 2008, a claim for UAMC's failure to repurchase/indemnify within 30 days of demand accrued on September 21, 2008, 31 days after LBHI's August 30 demand. (UAMC SMF ¶ 17). Either way, LBHI's claim for breach of contract is timely.

## 3.  Even If Delaware Law Applies, the Statute of Limitations was Tolled

Although UAMC requests Delaware law, UAMC ignores Delaware's discovery rule.[20]  "Under the discovery rule, also known as the doctrine of unknowable injury, this Court will toll the statute of limitations in instances 'where it would be practically impossible for a [counterclaimant] to discover the existence of a cause of action.'" *Eni Holdings, LLC v. KBR Group Holdings, LLC*, 2013 WL 6186326 *13 (Del.Ch. November 27, 2013) (citations omitted).  LBHI was indeed ignorant of the defective nature of the Loan at the time of sale because Purchaser LBB expressly relied upon UAMC's representations as to the loan quality. SG § 701 ("Loan [is]…purchased in reliance upon Seller's representations…"). The tolling of the statute of limitations is a matter of fact;

---

[20] UAMC cites *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del.2004) for the proposition that Delaware has no discovery rule.  This is misleading. The *Wal-Mart* opinion is a succinct remand on the basis that the trial court could not have determined as a matter of law that the statute of limitations had not been tolled.

UAMC has failed to offer any undisputed material facts in this regard. *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del.2004).

<u>PART C: CAUSATION AND INDEMNIFICATION</u>

**1.    LBHI's Sale of the Loan to Freddie Mac Did Not Release UAMC**

UAMC's arguments regarding causation asserted on page 14-16 of its Motion, with heading "Admitted Lack of Causation Means No Liability" is largely a verbatim cut-and-paste from UAMC's Response [Doc. 48] to LBHI's Motion for Partial Summary Judgment.  LBHI relies upon and incorporates the arguments asserted in LBHI's Reply. [Doc. 55].  It is worth reiterating that UAMC again claims LBHI is precluded from challenging UAMC's breaches because LBHI sold the Loan upstream to Freddie Mac with representations about the Loan made in reliance upon UAMC's representations. Remarkably, UAMC is taking the position that LBB should have never relied on UAMC's representations and ignores that UAMC acknowledged LBHI's reliance upon UAMC's representations in SG § 701 ("Loan is purchased in reliance upon [Seller's representations]"). UAMC's argument—LBHI's sale to a third party has relieved UAMC of its obligations under the parties' contract—turns the contract on its head.  The point of the contract was that UAMC, as delegated underwriter, would perform the underwriting function and that LBHI could expressly rely upon UAMC's representations. *See*, SG § 701, Am. Compl. Ex. 2 [Doc. 7-3].

**2.    UAMC's Claim of Improper Indemnification Is Unsupported**

UAMC's claim that LBHI's does not "qualify" for indemnification is meritless.  Not once does UAMC address the contractual language that specifically describes UAMC's indemnification obligation.  SG § 711.  Also, not one of UAMC's cited cases are relevant

to the facts of this lawsuit.  For example, UAMC's lead case, *Feuer v. Menkes Feuer,* 8 A.D. 2d 294, 299 (N.Y. App. Div. 1959), turned on the fact that the parties' contract required plaintiff notify defendant of indemnification claims and, when plaintiff failed to do so, plaintiff was required to establish the reasonableness of the settlement.  See *Callanan Road Imp. Co. v. Cayuga Const. Corp*, 321 F.Supp. 1317, 1328 (N.D.N.Y. 1967) (distinguishing *Feuer*).  No such notice was required here, as briefed at page 7 of LBHI's Reply [Doc. 55].

UAMC cites case law where a "mere volunteer or intermeddler" makes a volunteer payment. But LBHI had a contractual obligation to repurchase/indemnify Freddie Mac upon demand, as addressed at pages 9-10 of LBHI's Reply [Doc. 55]. UAMC takes too narrow a view of what it means to be "legally bound" to pay a claim. UAMC places emphasis on the fact that LBHI's payments to Freddie Mac were not pursuant to a court order but cites no case law to support the idea that only by directive of a court can one make a valid indemnification payment.  Moreover, courts across the country have granted summary judgment for LBHI in cases where LBHI has indemnified third parties like Fannie Mae or Freddie Mac and the result should be no different here. See, e.g., *LBHI v. Cal. Fin. Grp., Inc.*, 2011 WL 4375724 at *9 (granting LBHI summary judgment on loan for which it "indemnified the third party for a loss").

## IV. <u>CONCLUSION</u>

Whether by the contract's exclusion of conflict of laws or its inclusion of New York remedies, New York law controls the limitations period, making it six years.  Use of the forum state's limitations period leads to the same result.  In any event, LBHI's claim is timely even under UAMC's proffered three-year period because LBHI's

indemnification of Freddie Mac occurred within the three year period.  LBHI respectfully requests this Court deny UAMC's Motion and grant LBHI's Motion for Partial Summary Judgment, thereby enforcing the contractual obligations to which UAMC agreed.

DATED this 17th day of December, 2013.

By: _s/ Christopher P. Carrington_____
    Christopher P. Carrington
    Foster Graham Milstein & Calisher LLP
    360 S. Garfield, 6th Floor
    Denver, CO 80209
    Telephone: 303.333.9810
    Facsimile: 303.333.9786
    Email: carrington@fostergraham.com
    *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of December, 2013, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO UNIVERSAL'S MOTION FOR SUMMARY JUDGMENT** was electronically filed and served via *ECF* as follows:

Marisa C. Ala
Palumbo Bergstrom, LLC
8375 South Willow Street, Suite 300
Lone Tree, Colorado 80124
mala@palumbolawyers.com

Philip R. Stein
Bilzin Sumberg Baena Price & Axelrod, LLP
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
PStein@bilzin.com

_____*s/ Dyanna Spicher*_____