# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00090-PAB-MJW

LEHMAN BROTHERS HOLDINGS, INC.
    Plaintiff,

v.

UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC
    Defendant.

## PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO AMEND JUDGMENT

Plaintiff Lehman Brothers Holdings Inc. ("Plaintiff" or "LBHI") respectfully submits this response and opposition to *Universal American Mortgage Company LLC's Motion to Amend Judgment Pursuant to F.R.C.P. 59* [Doc. 122], as follows:

Defendant Universal American Mortgage Company, LLC ("Defendant" or "Universal") fails to acknowledge the standards governing a motion under Rule 59, under which the bases for granting relief are exceptionally limited:

> Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice… It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.

*Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations omitted).

Defendant fails to demonstrate a change in the controlling law, new evidence, or manifest injustice and, instead, merely revisits issues already addressed by this Court in a well-considered twenty-eight page decision. Defendant's request should be directed to the Tenth Circuit, not this tribunal.

# ARGUMENT

## A. LBHI's Claim Accrued Upon Payment to Third Party Freddie Mac

Defendant claims that contractual indemnification is "a remedial provision", rather than a contractual obligation, and therefore is not subject to indemnification claim accrual rules. (Motion at 3). But this ignores the plain language of the contract. As this Court's Order recognized, the Parties' contract contained a separate and express contractual provision providing for indemnification. *See*, Order at 20-21, citing to Section 711 of the Agreement [Doc. 115]. It follows, then, that failure to perform an express contractual obligation to indemnify is a separately-actionable breach of contract, not merely a "remedial provision". Accordingly, LBHI pled its first claim for relief as "breach of contract," stating, in relevant part, "Universal further breached the Agreement and Seller's Guide by…failing to indemnify Lehman for its losses as to Loan ****5128." Am. Comp. ¶ 45 [Doc. 7].

In support of its position, Defendant offers misleading caselaw and even asks the Court to rely on an order that has been vacated. Defendant also misapprehends the Court's analysis and the issues addressed in the Order.

### 1. Defendant's Citation to Recent Colorado Opinions is Misleading

Defendant claims "at least eight cases" purportedly support its position. (Motion at 3). This is misleading for a number of reasons.

First, in the case involving plaintiff Aurora, contractual indemnification was not at issue because Aurora did not pay a third party. *See Aurora v. Standard Pacific Mortgage*, 2014 WL 1056383 (D. Colo. March 19, 2014 (Martinez, J.).

Similarly, the time of accrual of contractual indemnification was not even addressed by the Court in *LBHI v. UAMC*, 2014 WL 292858 (D. Colo. Jan 27, 2014) (Blackburn, J.).[1]

*LBHI v. Guaranteed Rate*, Case No. 2012-cv-1340 (Douglas County), is not controlling because the summary judgment order upon which Defendant relies was later ***vacated*. Exhibit 1**[2].

*LBHI v. TBI Mortgage Company f/k/a/ Westminster Mortgage* also fails to support Universal's position because the *TBI Mortgage* court did not address the indemnification provision of the Seller's Guide that is at issue here. **Exhibit 2**[3]. Instead, in determining the timeliness of LBHI's indemnification claim in that case, the *TBI Mortgage* court relied on a supplementary indemnification agreement that LBB and TBI entered into after LBB discovered that the subject mortgage loan suffered from a first payment default. *See* Exhibit 2 at 1. The court acknowledged that it need not even reach the limitations question because under the separate October 2007 Indemnity Agreement the parties expressly "**agreed** to toll the statute of limitations as to defenses that might be raised to claims made by Plaintiff under the Indemnity Agreement." Exhibit 2 at 7 (emphasis in

---

[1] In that case, LBHI paid a third party three years and three months prior to filing suit and, therefore, if the borrowing statute applied to make the limitations period three years, it was arguably of little consequence that the claim accrued at time of payment to the third party (unless the court were to find it accrued in favor of LBHI, an issue unaddressed by the parties). Thus, the Court, and the briefing, focused on the application of the borrowing statute.

[2] This document is part of the public record in the state court system. Rather than burden this Court and its staff with authentication declarations the document is submitted as is.

[3] This document is also part of the public record and is therefore submitted as is.

original). Thus, the Partial Summary Judgment Order in *TBI Mortgage* has no relevance to a determination of the timeliness of LBHI's contractual indemnification claim here, made pursuant to Section 711 of the Seller's Guide.

The remaining four cases cited by Defendant were issued by the same judicial officer, were incorrectly decided, and are therefore on appeal. *LBHI v. UAMC*, 2014 WL 1715365 (D. Colo. Apr. 30, 2014) (No. 13-cv-0087-CMA-MJW); *LBHI v. UAMC*, 2014 WL 1715225 (D. Colo. Apr. 30, 2014) (No. 13-cv-00088-CMA-MEH); *LBHI v. UAMC*, 2014 WL 1715204 (D. Colo. Apr. 30, 2014) (No. 13-cv-00093-CMA-MJW); *LBHI v. First California Mortgage Corp.*, 2014 WL 1715120 (D. Colo. Apr. 30, 2014) (Arguello, J.)  In each of these remaining four cases, the court misinterpreted New York law as to the accrual of indemnity claims, finding the fact that LBHI made a payment to third-party Freddie Mac to be mere "semantics".  *See* Order Denying Plaintiff's Rule 59 Motion, at 2 and fn. 1, 1:13-cv-00088-CMA-MEH at 2 (Aug. 5, 2014) (Arguello, J.) [Doc. 122].  As discussed below, under clear New York law, claims for contractual indemnification arising out of payments to a third party are treated differently than claims for breach of contract:  indemnification claims only accrue once the payment to the third party has been made.  Indeed, there is a surfeit of New York authority making this very distinction, from the New York Court of Appeals to the Second Circuit. *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, -- F.3d --, 2014 WL 3844155 (2d Cir. Aug. 6, 2014).

2. <u>Defendant Misapprehends the Court's Analysis and the Relevant Issues</u>

Defendant argues that "the right to demand contractual indemnification…is nothing more than a remedial provision…and, likewise, a party's *request for indemnification* certainly does not give rise to a new or distinct claim." (Motion at 3)

(emphasis added). But LBHI did not assert that its claim arose when it demanded indemnification by Universal, and the Court did not so hold. Instead, the Court found that, under New York law, contractual indemnification claims accrue—and the statute of limitations begins to run—when the indemnitee makes a payment to a third party.

The Court rightly held that LBHI's claim accrued on "August 7, 2008 when plaintiff made Freddie Mac whole for Loan 5128." (Order at 22.) It properly looked to New York's highest court, stating "an indemnification claim is independent of the underlying wrong and for the purpose of the Statute of Limitations accrues when the loss is suffered by the party seeking indemnity through payment to a third party." Order at 21 (*citing McDermott v. City of New York*, 406 N.E2d 460, 462-63, 50 N.Y.2d 211, 215 (N.Y. 1980) (holding "the right to indemnity…springs from contract, express or implied" and therefore indemnification claim accrues when party seeking indemnity suffers loss)).[4]

Nevertheless, Defendant asserts over several pages, that "a request for indemnification" would not extend the statute of limitations and that claims do not later accrue "when the demand is subsequently made or refused." (Motion at 4, citing *Lehman XS Trust, Series 2006-4N v. Greenpoint Mortgage Funding, Inc.* 2014 WL

---

[4] New York law applies this principle in indemnity suits between residential mortgage loan buyers and sellers, allowing plaintiffs to pursue loan originators for losses arising from payment to a third-party. *See Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*, 33 Misc. 3d 720, 735-737 (N.Y. Sup. Ct. 2011). "It is well settled that a cause of action based upon a contract of indemnification does not arise until liability is incurred by way of actual payment…. Since the cause of action is not complete until loss is suffered, familiar Statute of Limitations principles dictate that accrual occurs upon payment by the party seeking indemnity." *Varo, Inc. v. Alvis, PLC*, 261 A.D. 2d 262, 265 (N.Y. Sup. Ct. 1999) (*citing McDermott*, 50 N.Y. 2d at 217).

108523 at *3 (S.D.N.Y. Jan. 10, 2014), a case that did not involve contractual indemnification arising from payment to a third party). Defendant misses the point. Stating that the Court's analysis "makes no sense" (Motion at 4, n. 2), Defendant's confusion is borne only of its own misunderstanding of this Court's analysis. The Court did not hold, and LBHI did not argue, that its claim accrued at the time Plaintiff *demanded* compliance from Defendant.

Defendant concedes that "a common law indemnity claim…accrues when the costs are incurred" but asserts that the law is somehow different when it comes to contractual indemnification claims. (Motion at 8). Highlighting both the futility of Defendant's argument and the accuracy of this Court's analysis, the Second Circuit recently confirmed: "Ordinarily, a claim for contractual indemnification only accrues once the indemnitee has suffered a loss, i.e., made a payment." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, -- F.3d --, 2014 WL 3844155 (2d Cir. Aug. 6, 2014) (citations omitted). Defendant has not articulated any basis for an exception to this general rule of New York law.

Finally, Defendant cites an unpublished Delaware case as proof that a subsequent payment to a third party cannot be the accrual date for contractual indemnification claims. (Motion at 7, citing *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings, LLC*, 2012 WL 3201139 (Del. Ch. 2012)). This case, however, is inapposite for both factual[5] and legal reasons, the most obvious of which is that the

---

[5] Also, the litigation in *Central Mortgage* was between an agent—the loan servicer—and its principal—the loan investor. The case was not between the seller and buyer of a loan, as is the case here. *Central Mortgage* would be more analogous if Aurora Loan Services repurchased loans from a third party in accordance with its

plaintiff in *Central Mortgage* had no contractual right to indemnification: "notably…neither the Master Agreement nor any of the transaction-specific documents contained any indemnification provision in favor of [plaintiff]." *Central Mortgage*, 2012 WL 3201139 at 6.

Regardless of how *Central Mortgage* is interpreted, Delaware law follows New York and is exactly the opposite of what Defendant claims. Delaware's highest court has clarified that "[i]ndemnification claims do not accrue until the underlying claim is finally decided…a cause of action for indemnification accrues when the [party] entitled to indemnification can be confident any claim against him has been resolved with certainty." *LaPoint v. Americsource Bergen Corp.* 970 A.2d 185, 198 (Del. 2009); *see also Sharf v. Edgcomb Corp.*, 864 A.2d 909, 919 (Del. 2004)); *Breakaway Solutions, Inc. v. Morgan Stanley & Co. Inc.*, 2014 WL 1949300, *14 (Del. Ch. 2004) (holding "indemnification claims do not accrue until the party seeking indemnification has made payment to the injured person") (citing *McDermott v. City of New York*, 50 N.Y.2d 211, 215 (N.Y. 1980)).

## B. LBHI's Payment to Third Party Freddie Mac is Undisputed

Defendant claims that LBHI's payment to Freddie Mac is "very much in dispute" because "UAMC clearly did not concede…that Plaintiff made a payment to Freddie Mac." (Motion at 9). Defendant misunderstands its burden in a Rule 56 context, which requires at that "A party asserting that a fact…is genuinely disputed must support the

---

servicer duties and then sought payment from its principal, Lehman Brothers Holdings, based upon a contract that did not contain a contractual indemnification provision. Those, however, are not the facts before this Court, where a loan seller is contractually obliged to indemnify a loan buyer for payments the buyer makes to third parties related to defects in the seller's loans.

assertion by (A) citing to particular parts of materials in the record…or (B) showing that materials cited do not establish the absence…of a genuine dispute." Fed. R. Civ. P. 56(c). Defendant's unwillingness to concede a material fact does not insulate Defendant from a finding that the fact is undisputed; the rule requires something more from the non-movant.

Defendant offers no affirmative evidence in support of its position. Instead, Defendant baselessly asserts Plaintiff's evidence is insufficient, and falsely claims LBHI offered only a wire authorization. This is incorrect. LBHI offered a wire authorization *and* a wire confirmation. Exhibit 11 to LBHI's Declaration of John Baker is a wire authorization specifically identifying the subject loan. Exhibit 12 to Mr. Baker's Declaration is a wire confirmation. *See* Baker Decl. ¶ 20. Defendant refers to its supposed expert's request for proof of a "wire transfer or other exchange of cash that shows exactly what was paid." (Motion at 9). That is exactly what was provided: an authorization of $1,546,569.67 with $140,161.71 of that amount attributable to the subject loan and then confirmation of that same amount. By Defendant's own account, its expert would be satisfied with the evidence provided.

As for the August 20, 2008 letter upon which Defendant solely relies to question LBHI's rights to the Agreement, this issue has been previously addressed and weighed by the Court: "the August 20, 2008 letter is not sufficient to raise a genuine dispute of material fact…" Order at 5-6, n. 2. As such, the issue is inappropriate for a Rule 59 motion and the Court need not reconsider this point. In any event, as pointed out by the Court, there is an overabundance of evidence confirming LBHI's rights, as even Defendant fails to dispute in its own summary judgment motion. Order at 5, n. 2.

Defendant even subpoenaed records from Freddie Mac that confirm, overwhelmingly, that Plaintiff sold this loan to Freddie Mac, identifying LBHI as Seller.  *See*, *e.g.* Supplemental Carrington Decl. ¶ 5, Ex. 7 [Doc. 55-1] submitted in connection with LBHI's Reply Brief in support of LBHI's Motion for Summary Judgment.

Similarly, the Parties' Agreement expressly states that Aurora Loan Services is the agent for these loans, a fact the Court has already addressed and decided (Order at 2, n. 1) and need not revisit.

**C. LBHI was Liable to Third Party Freddie Mac for the Loan's Defects**

Defendant claims LBHI failed to demonstrate liability to Freddie Mac for the defects in the subject loan. (Motion at 11).  Yet this Court analyzed this issue at length and determined that "plaintiff has demonstrated that the inaccuracy identified by Freddie Mac was indeed present and thus that plaintiff was liable to Freddie Mac for Freddie Mac's losses on the loan, regardless of whether plaintiff was under a court order to make the payment." Order at 26.  Defendant apparently believes that contractual liability is not tantamount to "actual liability."  In any event, the Court need not revisit this issue under a Rule 59 standard.

Defendant also speculates that Freddie Mac's claims may have been defensible. Yet, the same defect asserted by LBHI against Defendant is the same defect that Freddie Mac asserted against LBHI.  LBHI's lack of defense to Freddie Mac's claim is evidenced by Defendant's same lack of defense here.  And in any case, the Court held that Defendant's indemnification liability for the breach of its warranties under its agreement with LBHI was limited to the extent that those breaches were co-extensive with the warranties LBHI breached in its contract with Freddie Mac.  (Order at 24.)

**D. LBHI Relied Upon Defendant's Representations**

Defendant's final argument can be distilled to this: LBHI told Freddie Mac that the loan was sound but now says the loan is not and therefore a jury must be permitted to question LBHI's credibility. (Motion at 13). In support, Defendant cites cases where witnesses contradict themselves in the context of a lawsuit, such as between depositions. Defendant stretches the application of those cases further than common sense will allow. This is not a question of a witness providing conflicting testimony.

Instead, LBHI (or its assignor) purchased loans from Defendant subject to representations about the quality of the loan. LBHI, relying upon Defendant's representations, then made similar representations to a third party. To the extent LBHI's representations to a third party (the loan is good) conflict with claims made in this lawsuit (the loan is bad), that is only because LBHI relied upon Defendant's representation that the loan was good. Thus, in a remarkable perversion of the Agreement, Defendant seeks to penalize LBHI for relying upon Defendant's contractual representations while ignoring Defendant's express agreement that LBHI could and would indeed rely upon Defendant: "Seller acknowledges that the Loan [is] purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties…" Seller's Guide § 701. Defendant's argument—that LBHI's representations to a third party, made in reliance upon Defendant's representations, have broken any chain of causation to Defendant—turns the contract on its head and should be rejected (for a second time).

## **CONCLUSION**

Defendant's Motion is nothing more than a thinly-veiled (if veiled at all) attempt to revisit the arguments previously considered and rejected by this Court. This is an inappropriate use of a Rule 59 Motion. The Motion should be denied.

Dated this 4th day of September, 2014.

Respectfully submitted,

By: */s/ Christopher P. Carrington*
 Christopher Carrington
 Email: Carrington@fostergraham.com
 **Foster Graham Milstein & Calisher, LLP**
 360 S. Garfield Street, Ste. 600
 Denver, Colorado 80209
 Telephone: (303) 333-9810
 *Attorneys for Plaintiff Lehman Brothers Holdings Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2014, the foregoing **PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO AMEND JUDGMENT** was filed and served via *ECF* as follows:

Marisa C. Ala
Palumbo Bergstrom, LLC
8375 South Willow Street, Suite 300
Lone Tree, Colorado 80124
mala@palumbolawyers.com

Philip R. Stein
Enza Boderone
Bilzin Sumberg Baena Price & Axelrod, LLP
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
PStein@bilzin.com
EBoderone@bilzin.com

                                                s/ *Dyanna Spicher*
                                                Dyanna Spicher, Paralegal