UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

CASE NO. 1:13-CV-00090-PAB-MJW

LEHMAN BROTHERS HOLDINGS, INC.,

    Plaintiff,

v.

UNIVERSAL AMERICAN MORTGAGE
COMPANY, LLC,

    Defendant.

---

# UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC'S REPLY MEMORANDUM SUPPORTING MOTION TO AMEND JUDGMENT PURSUANT TO F.R.C.P. 59

---

Plaintiff's brief in opposition (Doc. No. 126) to the Rule 59 motion (Doc. No. 122) filed by UAMC is rife with erroneous analysis, offering no sound basis on which to deny UAMC's motion. UAMC responds as follows to Plaintiff's three principal[1] counter-arguments.

### Statute of Limitations Accrual

Plaintiff offers legal analysis that is completely contradicted by New York and Delaware case law. Its assertions even contradict case precedents and principles identified in the Court's analysis in the Order (Doc. No. 115) at issue -- precedents and principles that UAMC believes the

---

[1] Plaintiff opens its brief with a perfunctory statement that UAMC has ignored the standard applicable to a Rule 59 motion. Though UAMC did not recite the standard in its initial brief, it made emphatically clear that its motion sought to redress what it sees as clear, material errors in the Court's Order. (*See, e.g.*, Doc. No. 122 at 1) ("UAMC asks for alteration or amendment of the Order on the basis of those errors"). The notion, also briefly set forth by Plaintiff, that UAMC previously made these same arguments is likewise off the mark. UAMC's motion focuses specifically on the Order's identification of two key case law standards that the Court then did not apply, and on two allegations that the Order terms "undisputed" that were in fact hotly disputed. UAMC could not possibly have made arguments responsive to specific statements made by the Court in its Order before that Order issued.

Court did not apply consistently or properly. And Plaintiff fails even to mention yet another recent decision of this Court (Judge Martinez, in this latest instance) specifically and categorically rejecting the same argument Plaintiff is making in this case regarding the purported effect on the statute of limitations of a claim that seeks indemnification as a remedy for an alleged earlier breach of a contract. Judge Martinez's opinion in *LBHI v. UAMC*, No. 13-CV-00092-WJM-BNB (D. Colo. Aug. 28, 2014) is attached hereto as Exhibit "1."

In the Order that is the subject of this motion, the Court recognized that New York's borrowing statute applies to all claims that accrue outside of New York in favor of a party residing outside of New York at the time the claim accrues. (Doc. No. 115 at 10). Plaintiff's predecessor-in-interest resided in Delaware "at the time the contract was allegedly breached" by Universal American Mortgage Company, LLC ("UAMC"), (*id.* at 17) and Delaware's three-year statute of limitations therefore barred Plaintiff's "claim for breach of the agreement's warranties and for failure to cure." (*Id.* at 20). "For the purpose of the borrowing statute, a claim 'accrues' in the place where and at the time when the 'plaintiff first had the right to bring the cause of action.'" (*Id.* at 11). The Court correctly stated that, under governing law, "a remedial provision, such as a cure or repurchase clause, does not extend the time in which a claim may accrue, nor does a party's request for repurchase give rise to a new claim." (*Id.* at 12).[2]

---

[2] Presumably, the Court did not intend to suggest by this phrasing that a "cure or repurchase clause" is the *only* type of remedial provision to which this repeatedly-emphasized principle applies, nor did it mean to say that *only* a "request for repurchase" does not give rise to a new claim. As documented in UAMC's initial brief in support of the present motion (Doc. No. 122 at 4-5), the pertinent case law in no way distinguishes among types of remedial provisions, and no such distinction would be sensible in this context. Governing law makes clear that "there is no practical difference between [a] 'repurchase' remedy and compensatory damages." *Deutsche Alt-A Securities Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Products, Inc.*, 958 F.Supp.2d 488, 501-502, 2013 WL 3863861, *11 (S.D.N.Y.,2013), quoting *Orix Real Estate v. Superior Bank, FSB*, 127 F.Supp.2d 981, 983 (N.D.Ill.2000) (applying New York law). Indeed, Plaintiff's amended pleading mentioned neither repurchase nor indemnification (a compensatory remedy) in the Prayer for Relief, and its sole claim for relief (for "breach of contract") referred to "failing to

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456

But the Court nevertheless treated Section 711 (Indemnification) of the Seller's Guide, a remedial provision intended to redress losses or damages *"related to or resulting from* [i.e., precipitated by]" an "act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement" as if it did indeed give rise to a new and distinct claim, and therefore effectively extended the time in which a claim may accrue. This treatment of Section 711 plainly contradicts the New York case law cited by the Court, and a "failure to indemnify" under this provision could never constitute a "separate breach" that could stand as the *cause* of any loss purportedly suffered by Plaintiff anyway. This indemnification provision, as the quoted text makes clear, requires that the alleged loss relate to or result from a *prior* breach, act, or failure to act by UAMC. Thus, even in the best possible case for Plaintiff, the alleged payment constituting its "damage" was triggered by something that UAMC had done wrong years before, in the loan origination process. Consequently, under no circumstance can Plaintiff plausibly claim that, *in the aftermath of the alleged payment constituting its "loss,"* a failure by UAMC to provide Plaintiff with the remedy that it thereafter sought was itself the "cause" of Plaintiff's alleged loss. Nor can Plaintiff possibly explain how the "failure to indemnify" caused any damages that were in addition to, or distinct from, the alleged already-existing loss (the payment related to or resulting from a purported prior breach by UAMC). Moreover, if UAMC truly sold Plaintiff a loan that was not what Plaintiff had bargained for contractually, Plaintiff clearly did not *first* sustain a loss or damage when it allegedly made a payment to Freddie Mac years later; it sustained a loss when it paid UAMC for an allegedly non-compliant loan.

---

repurchase Loan 5128 and/or failing to indemnify Lehman for its losses as to Loan 5128," essentially treating these potential remedies as interchangeable. (Doc. No. 7 at 9 (¶ 45) and 10).

3

In opposing UAMC's Rule 59 motion, Plaintiff attempts to refute an array of irrefutable points: (1) that both New York and Delaware assess pre-suit remedial provisions (e.g., indemnification *as a remedy for a contractual breach*) entirely differently from stand-alone indemnification agreements (promises to indemnify not tied to any wrongful act by a defendant) and from common-law (tort) indemnification claims; (2) that courts applying the law of those states in no way distinguish between remedial repurchase provisions and remedial indemnification provisions (nor is there any conceivable logical basis for doing so); (3) that Section 711 is of course a pre-suit remedial provision; and (4) that Plaintiff's argument, namely that a breach of contract claim seeking repurchase or indemnification as contemplated by a contractual remedial provision accrues when payment is made to a third party, has repeatedly been rejected not merely by New York and Delaware courts, but by this District Court as well.

Underscoring the difficulty of Plaintiff's task in opposing this motion, its contentions are unmistakably off the mark. In Plaintiff's telling, there is a "surfeit" of cases (almost entirely uncited by Plaintiff) in New York and Delaware establishing that "indemnification" claims "only accrue once the payment to the third party has been made." (Doc. No. 126 at 4). It is well worth noting that the only case cited by Plaintiff as supposedly emblematic of this "surfeit," the *Sompo* case, has nothing whatsoever to do with the statute of limitations, much less the "borrowing statute" portion of New York's statute of limitations. And the statement from *Sompo* quoted by Plaintiff -- shockingly, Plaintiff characterizes it to the Court as "this general rule of New York law" (*id.* at 6) -- is *dicta* in a case about the enforceability of provisions found in bills of lading designating an ocean carrier as the entity responsible to cargo owners for any damage to cargo.

But Plaintiff's error is not confined to its huge exaggeration of the importance of *Sompo*. There are three things that Plaintiff consistently studiously avoids discussing in its analyses of this

4

issue. First, Plaintiff never acknowledges (let alone rebuts) the oft-repeated, directly on-point holdings of New York courts -- recognized by this Court in its Order -- that "*a remedial provision, such as a cure or repurchase clause, does not extend the time in which a claim may accrue, nor does a party's request for repurchase give rise to a new claim.*" (Doc. No. 115 at 12) (emphasis added). Second, Plaintiff likewise never grapples with clear directives from New York courts that "there is no practical difference between [a] 'repurchase' remedy and compensatory damages."[3] *Deutsche Alt-A Securities Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Products, Inc.*, 958 F.Supp.2d 488, 501-502, 2013 WL 3863861, *11 (S.D.N.Y.,2013). Third, Plaintiff never acknowledges the fundamental differences among three different bases for "indemnification" -- two of which have nothing whatsoever to do with this case, but are nevertheless the subjects of *all* cases in which Plaintiff finds any support for an "accrual at time of payment" standard.

One basis of indemnification is an outright, unfettered agreement to indemnify (i.e., a promise to make a payment upon the occurrence of a defined future event, one that is not tied to, for example, a prior contractual "breach"). It is this kind of indemnification that was referenced in *Sompo*, where prospective payment was tied specifically to a future event ("a railroad accident, derailment, or collision between railroad equipment negligently caused by [the railroad carrier])." *Id.* at *5. So it would make sense that the future "accident, derailment or collision" must actually occur for a possible indemnification claim to become viable. Moreover, under the *Sompo* indemnification provision, the triggering event plainly would not need to be linked back, as is required under the indemnification provision at issue in the suit before this Court, to some pre-

---

[3] If Plaintiff for some reason believes that receiving an indemnification payment via a successful lawsuit would be something other than an award of "compensatory damages," it neglects to mention or explain that belief in its opposition brief.

5

injury breach of contract, or to some event that occurred before a sale by the defendant to the plaintiff. And the *Sompo* court had no statute of limitations issue before it in any event.

The second type of indemnification that has nothing to do with this case is a common-law *indemnification cause of action* (as opposed to a breach of contract claim, as in this suit, that merely seeks a contractual indemnification *remedy*). This is the type that was before the court in the *McDermott* personal injury case that this Court cited in concluding erroneously that Plaintiff's breach of contract claim did not accrue until it allegedly paid Freddie Mac. One should not presume that New York courts, federal courts in New York, and other courts applying New York law (including this District Court in repeatedly rejecting Plaintiff's argument) were all unmindful of accrual rules for common-law indemnification claims when they repeatedly determined that an entirely different accrual rule (accrual at the time of the allegedly breached representation or warranty) applies in cases involving the contractual remedies of repurchase and/or indemnification (the third type of indemnification, the type for which Plaintiff never cites a case embracing its accrual theory). *See, e.g., Structured Mortg Trust 1997-2 v. Daiwa Fin. Corp.*, No. 02 42 Civ. 3232, 2003 WL 548868, at *2-3 (S.D.N.Y. 2003) ("Daiwa's false warranties and representations breached the contract at its inception in March 1994 . . . [S]ince the facts warranted in the March 1994 Pooling Agreement were not true when made, the statute of limitations began to run at that time, and expired six years later. . . . [P]laintiffs are asking this Court to [impose] in contract cases where there is a demand requirement . . . the otherwise rejected accrual-at-injury rule. Plaintiffs' argument must be rejected."); *Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2005-S4 v. Nomura Credit & Capital, Inc.*, 39 Misc. 3d 1226(A), at *9-10 (Sup. Ct. N.Y. Co. 2013) ("If the Mortgage Representations were false when made, they are still false today. . . . The Statute of Limitations runs from the time of breach of the Mortgage Representations . . .").

6

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456

But Plaintiff does not just ignore the dispositive case law and critical distinctions among bases for "indemnification." It also baselessly attempts to marginalize the myriad holdings by this Court and the Douglas County District Court that granted summary judgment or a motion to dismiss against Plaintiff (or, in one instance, its affiliate Aurora) after consideration of the very same accrual argument made by Plaintiff in this case. Four such case precedents evidently do not merit the Court's consideration, according to Plaintiff, simply because they were allegedly "wrongly" decided by the same jurist (Judge Arguello) and are presently in the earliest stages of appeal. A fifth, the most recent decision by Judge Martinez, is not even brought to the Court's attention by Plaintiff, despite the fact that it was issued after UAMC filed this motion but well before Plaintiff filed its opposition brief. Plaintiff feebly tries to distinguish a sixth case on the grounds that, sure, the Court held that the claim accrued at the time the loan was sold, not at the later time the alleged loss was sustained, but the loss was not in the form of an *indemnification* payment, so the case must somehow be regarded as wholly distinct from this one.[4] Plaintiff tosses aside a seventh motion for summary judgment granted against it, by Judge Blackburn (who also denied Plaintiff's Rule 59 motion in that case),[5] because his two opinions did not focus extensively on the alleged "indemnification" payment. And, most remarkably, Plaintiff seeks to spin a summary judgment ruling against it by Douglas County's District Court[6] as a purported victory, in that the court did not grant summary judgment against Plaintiff as to the portion of that

---

[4] *Aurora v. Standard Pacific Mortgage*, 2014 WL 1056383 (D. Colo. March 19, 2014) (Martinez, J.)

[5] *Lehman Brothers Holdings, Inc. ("LBHI") v. UAMC*, 2014 WL 292858 (D. Colo. Jan. 27, 2014) (Blackburn, J.)

[6] *LBHI v. TBI Mortgage Company f/k/a Westminster Mortgage*, Case No. 2012CV2437, District Court of Douglas County, Colorado. Plaintiff also exults that a ninth judgment entered against it, the *Guaranteed Rate* case, has now been "vacated," but neglects to add that this was as a consequence of the terms of a subsequent settlement agreement between it and the victorious defendant, not because of any reconsideration by the court.

7

case that pertained to a stand-alone indemnification agreement (the entire contract was titled "Indemnification Agreement") because the parties to that stand-alone agreement had specifically agreed to tolling of the limitations period.

The bankruptcy of Plaintiff's counter-argument is perhaps most vividly on display when it takes a stab at contending that Section 711 of the Seller's Guide is not really a remedial provision after all. This is a difficult argument to make, inasmuch as the text of that provision identifies it as an addition to "*other remedies.*" (Doc. No. 47-2 at § 711 (emphasis added).) Also, Plaintiff's affiant, Mr. Baker, avowed in support of Plaintiff's motion for partial summary judgment that "LBB has assigned to LBHI . . . all rights *to repurchase and indemnity remedies*, among other things." (Doc. No. 47-1 at ¶ 11 (emphasis added).)

### Plaintiff Did Not Establish True Liability to Freddie Mac

Plaintiff inadvertently makes a damning admission when it tries to argue that the Court was correct to prevent the jury from considering, and weighing, plainly contradictory past statements by Plaintiff as to whether the loan or loan file was in any way deficient. Plaintiff evidently fails to recognize that its impassioned argument that it merely "relied on" UAMC when making all manner of positive representations and warranties about the loan to Freddie Mac is logically impossible and, in any case, tantamount to admitting that Plaintiff defrauded Freddie Mac at the time of sale.

It is logically impossible because Plaintiff made representations and warranties that were both different in scope and substance from, and later in time than, the representations and warranties that UAMC made to Plaintiff.[7] It is also tantamount to admitting fraud, because, as

---

[7] Doc. No. 48 at 4-5. A party selling a loan to Freddie Mac after having earlier purchased that loan from a third party necessarily must review and consider anew the loan file. The current status of the borrower's occupancy of the property, the timeliness of any payments recently due from the borrower, and the borrower's up-to-date credit report and liabilities (among many other things)

8

UAMC has also demonstrated, Freddie Mac specifically required anyone selling a loan to it to provide current, independent representations and warranties, and indeed required those warranties on subjects different from those covered in UAMC's contract with Plaintiff. (Doc. No. 48 at 4-5.)

### Key Evidence Was Very Much in Dispute

With regard to certain key, irrefutable facts, Plaintiff either denies objective reality or makes stunning admissions that further substantiate the merits of UAMC's motion. In the category of statements at odds with objective fact, Plaintiff doubles down on an outright misrepresentation: that a "wire confirmation" attested to in an affidavit by its witness John Baker (who testified at deposition that he had no first-hand knowledge of the transaction in question in any event) shows a payment for the Horstmann loan. Indeed, Plaintiff protests that UAMC's motion fails to acknowledge that the "evidence" Plaintiff proffered as supposed support for its claim of a payment consisted not merely of a facially meaningless internal authorization for a future payment, but also included a purported "wire confirmation." **But, in truth, that wire confirmation, as the related wire authorization makes clear, has nothing to do with the Horstmann loan.** Instead, the wire authorization identifying the loans for which the authorized amount was to be paid references loans with loan numbers that are *not* the one assigned to Horstmann. Attached as Exhibit "2" to this memorandum is the Declaration of Enza G. Boderone, which explains further the serious discrepancy between Mr. Baker's affidavit (and Plaintiff's heavy reliance on it to establish a supposed payment) on the one hand, and the true contents of the documents that Mr. Baker purports to be "certifying" (albeit without actual personal knowledge).

---

obviously cannot even be ascertained, much less unthinkingly "relied on," based on representations and warranties made at the time of the initial loan sale, and based upon information in a loan file prepared well in advance of that initial sale.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue, Suite 2300, Miami, FL 33131-3456

In the category of stunning admissions, Plaintiff slips and acknowledges that, as UAMC stated in its motion, the Court "weighed" (Doc. No. 126 at 8) some of the contrary evidence proffered by UAMC on the issue of whether Plaintiff made any payment at all, and thus might be able to seek the remedy of indemnification. But the jury, not the Court on a motion for partial summary judgment, gets to weigh evidence that tends to undercut or call into question a key aspect of the Plaintiff's claim. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (The court's function "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (per curiam) (internal quotation marks omitted); *Maranville v. Utah Valley University*, 568 Fed.Appx. 571, 574 (10th Cir. 2014). In making that determination, the court must "view the evidence in the light most favorable to the" party opposing summary judgment. *Tolan*, 134 S. Ct. at 1866 (internal quotation marks omitted).

For all the foregoing reasons, and on the authorities cited, UAMC respectfully requests that its motion be granted.

Respectfully submitted,

By:   */s/Philip R. Stein*
    Philip R. Stein, Esq. (Florida Bar No. 67278)
    pstein@bilzin.com
    Enza Boderone, Esq. (Florida Bar No. 0792411)
    eboderone@bilzin.com
    BILZIN SUMBERG BAENA PRICE
    & AXELROD LLP
    1450 Brickell Avenue, Suite 2300
    Miami, Florida 33131-3456
    Tel.: (305) 374-7580/Fax: (305) 374-7593
    -and-
    Marisa C. Ala, Esq. (#38693)
    PALUMBO BERGSTROM LLP
    8375 South Willow Street, Suite 300
    Lone Tree, CO 80124
    Tel/Fax: (303) 694-0561
    mala@palumbolawyers.com
    *Attorneys for Defendant, UAMC*

11

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing was served on counsel for Lehman Brothers Holdings, Inc. via CM-ECF this <u>22nd</u> day of September, 2014:

FOSTER GRAHAM MILSTEIN & CALISHER, LLP
Christopher P. Carrington
carrington@fostergraham.com
360 S. Garfield Street, 6th Floor
Denver, Colorado 80209

/s/Enza G. Boderone
Enza G. Boderone, Esq.

MIAMI 4329945.2 72743/42304