IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00090-PAB-MJW

LEHMAN BROTHERS HOLDINGS INC.,

    Plaintiff,

v.

UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC,

    Defendant.

## ORDER

This matter is before the Court on the Motion to Amend Judgment Pursuant to Fed. R. Civ. P. 59 [Docket No. 122], filed by defendant Universal American Mortgage Company, LLC ("Universal"). Universal moves the Court to reconsider that portion of the July 8, 2014 Order [Docket No. 115] ("Order"), granting in part plaintiff Lehman Brothers Holdings Inc.'s ("LBHI")'s Motion for Partial Summary Judgment [Docket No. 47]. The relevant factual background is set forth in the Order and will not be recited here.

### I. STANDARD OF REVIEW

Universal brings its motion pursuant to Fed R. Civ. P. 59(e), which concerns a "motion to alter or amend a judgment." However, no judgment has entered against Universal. Where a party files a motion for reconsideration prior to the entry of judgment or of a final order, Rules 59(e) and 60(b) do not apply. *Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962). Thus, Universal's motion is

procedurally improper and is denied on this ground. In the alternative, even if the Court construes Universal's motion as a motion for reconsideration, the Court nevertheless determines that Universal has failed to demonstrate its entitlement to relief.

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995). Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp.*, 313 F.2d at 92. However, in order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders. *See, e.g., Montano v. Chao*, No. 07-cv-00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at *1-2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the duty-to-defend order). Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

## II. ANALYSIS

### A. Indemnification

Universal argues that the Court erred in finding that plaintiff's claim for contractual indemnification was not barred by the applicable statute of limitations. Universal argues that contractual indemnification, like the right to demand cure or repurchase, is "nothing more than a remedial provision," *id.*, and that remedial provisions do not constitute an independent breach of contract because they simply provide for compensatory damages. *Id.* at 4.

In the Order, the Court cited *McDermott v. City of New York*, 50 N.Y. 2d 211, 215 (N.Y. 1980), for the proposition that a claim for indemnification is independent of the underlying wrong and therefore does not accrue until the loss is suffered through payment to a third party. Docket No. 115 at 21. Universal argues that *McDermott* is inapplicable because it applies to common law indemnification in tort actions and has "nothing to do with contractual indemnification relief." Docket No. 122 at 7-8. The Court disagrees.

Although *McDermott* concerned implied indemnification as opposed to contractual indemnification,[1] federal and state courts in New York have repeatedly affirmed the general rule that a cause of action for indemnification occurs when the indemnitee suffers a loss in the context of contractual indemnification. *See Moscato v.*

---

[1] Universal's characterization of *McDermott* as a "common law (tort) indemnification case" runs counter to how other courts have analyzed the nature of the indemnification duty in that case. *See, e.g., Murray Bresky Consultants Ltd. v. N.Y. Comp. Mgr's Inc.*, 968 N.Y.S. 2d 595, 600 (N.Y.A.D, 2013) ("common law indemnification . . . is a quasi-contract claim") (citing *McDermott*, 50 N.Y.2d at 217).

*City of New York (Parks Dep't)*, 183 A.D. 2d 599, 601 (N.Y. App. 1992) ("the alleged cross claim for contractual indemnification . . . would not accrue until payment had been made"); *see also Chrysler First Fin. Servs. Corp. of Am. v. Chicago Title Ins. Co.*, 156 Misc. 2d 814, 820 (N.Y. Sup. Ct. 1993) ("a plaintiff suing on a mortgage title insurance policy, similar to a plaintiff in an action on *any other indemnity contract . . .* is not entitled to indemnification prior to establishing damages) (emphasis added); *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, --- F.3d ----, 2014 WL 3844155 at *18 (2d Cir. Aug. 6, 2014) ("[o]rdinarily, a claim for contractual indemnification only accrues once the indemnitee has suffered a loss, *i.e.*, made a payment"). Universal attempts to distinguish between different types of contractual indemnification, arguing that a contractual agreement to indemnify against losses caused by a breach of contract is distinct from a contract to indemnify for future events not related to a breach. Docket No. 131 at 5-6. Universal cites no case that recognizes these distinctions, however.

Delaware law compels the same result. In *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185 (Del. 2009), the Delaware Supreme Court rejected the argument that an agreement to indemnify for damages resulting from a breach of contract accrues at the time of the underlying breach. The Delaware Supreme Court held that "[i]n a contract . . . in which one party agrees to indemnify the other for damages, including attorneys' fees, arising from that party's breach of the contract, the term 'indemnity' has a distinct legal meaning that permits the party seeking indemnification to bring a separate cause of action[.] . . . Indemnification claims do not accrue until the underlying claim is finally decided." *Id.* at 197-98. The rationale for treating indemnification as a separate cause

of action is "that the person seeking indemnity should not have to rush in at the first possible moment but rather should be able to wait until the outcome of the underlying matter is certain." *Id.* at 198 (quoting *Sharf v. Edgcomb Corp.*, 864 A.2d 909, 919 (Del. 2004)). Although *LaPoint* involved a case where the indemnitee was litigating the underlying breach, the principle that liability should be fixed before a cause of action for indemnification accrues applies with equal force where, as here, the indemnitee opts to avoid litigation via settlement or repurchase.

Universal cites a number of New York and Delaware cases that discuss repurchase demands and other "pre-suit cure or demand requirements," which do not constitute separate breaches for statute of limitations purposes. *See* Docket No. 122 at 4-5. Universal then attempts to lump indemnification in with other pre-suit remedial provisions to argue that a contractual indemnification claim is not an independent cause of action. *Id.* at 5. However, none of the New York or Delaware cases cited by Universal holds that a contractual indemnification claim accrues at the same time as the underlying breach. These cases hold only that the statute of limitations is not tolled by pre-suit contractual remedies such as repurchase demands. *See Structured Mortg. Trust 1997-2 v. Daiwa Finance Corp.*, 2003 WL 548868 at *2-3 (S.D.N.Y. Feb. 25, 2003) (holding that demand requirement did not toll the statute of limitations because plaintiff had a right to make a demand at the time of breach); *see also Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2005-S4 v. Nomura Credit & Capital, Inc.*, 39 Misc. 3d 1226(A), at *9-10 (Sup. Ct. N.Y. Cnty 2013) (holding that the statute of limitations for breach of mortgage representations does not run from "the time plaintiff

elected to make demands for repurchase."); *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472, 478 (S.D.N.Y. 2014) (holding that failure to comply with "cure or repurchase" obligations does not give rise to a separate breach of contract claim).

The Court is not persuaded by Universal's argument that the indemnification provision is legally indistinguishable from a repurchase remedy or other contractual demand requirements that provide for compensatory damages. The indemnification provision specifically provides that it is "in addition to any repurchase and cure obligations of [Universal]." Docket No. 7-3 at 46-47, § 711. To treat the indemnity and repurchase obligations as identical would render the indemnification provision mere surplusage. But "[a] reading of [a] contract should not render any portion meaningless." *Beal Savings Bank v. Sommer*, 8 N.Y. 3d 318, 324 (N.Y. 2007). Given that the terms of the indemnification provision state that indemnification is "in addition to any repurchase and cure obligations," the indemnification language cannot be ignored by the expedient of mischaracterizing it as a "remedial provision." Moreover, the indemnification provision provides for remedies beyond mere compensatory damages for a breach of contract, including "reasonable attorney's fees of [plaintiff] incurred in enforcing [Universal]'s obligations" under the agreement, and is triggered not only by a breach of the contract, but also by "any act or failure to act" that caused plaintiff damage. Docket No. 7-3 at 46-47, § 711.

In *SunTrust Mortg., Inc. v. Am. Pac. Home Funding, LLC*, 2012 WL 6561728 (E.D. Va. Dec. 14, 2012), the court considered whether an indemnification provision accrued at the time of payment in the context of a claim for breach of express

warranties related to the brokering and sale of mortgages to the Federal National Mortgage Association ("Fannie Mae").[2] The defendant claimed that failure to indemnify was not an independent breach of contract because the indemnification provision "only provide[d] for indemnification upon breach of a separate provision of the [a]greement." *Id.* at *4. The court found that since the indemnity provision provided a remedy for conduct other than a breach of contract, the indemnity provision "establishe[d] independent bases for a breach" for statute of limitations purposes. *Id.* Here, as in *SunTrust*, the indemnification provision provides an independent basis for a breach of contract claim. The statute of limitations on plaintiff's claim for indemnification therefore did not accrue until August 7, 2008, when Aurora Loan Services made payment to Freddie Mac on behalf of plaintiff. As such, plaintiff's claim for indemnification is not time-barred.

Universal also cites decisions in this district in similar cases involving the same parties, each of which has held that plaintiff's various claims are time-barred. Docket No. 122 at 3. Of the six cases cited, five of them did not discuss indemnification. One case discussed the statute of limitations, but only in the context of a breach of contract claim based on breach of warranty. *See LBHI v. Universal*, --- F. Supp. 2d ----, No. 13-cv-00091-REB-KMT, 2014 WL 292858 (D. Colo. Jan. 27, 2014). Four cases discussed and rejected the notion that Universal's failure to repurchase loans upon plaintiff's

---

[2]The *SunTrust* holding applied Virginia statutory law on accrual of a claim for indemnification. *SunTrust*, 2012 WL 6561728 at *3. The Virginia statute provides that claims for indemnification accrue when the "indemnitee has paid or discharged the obligation." Va. Code Ann. § 8.01-249(5). The Virginia statute does not differentiate between claims for common law indemnification and contractual indemnification.

demand constituted a separate breach of contract. *See LBHI v. Universal*, No. 13-cv-00093-CMA-MJW, 2014 WL 1715204 at *4 (D. Colo. April 30, 2014); *LBHI v. Universal*, No. 13-cv-00088-CMA-MEH, 2014 WL 1715225 at *4 (D. Colo. April 30, 2014); *LBHI v. Universal*, No. 13-cv-02113-CMA-KMT, 2014 WL 1715120 at *3 (D. Colo. April 30, 2014); *LBHI v. Universal*, No. 13-cv-00087-CMA-MJW, 2014 WL 1715365 at *4 (D. Colo. April 30, 2014). None of these five cases discussed the statute of limitations in regard to plaintiff's indemnification claim.

The final case plaintiff cites held that Universal's failure to repurchase a loan and indemnify plaintiff for its losses concerned "merely pre-suit contractual remedies" that did "not convert [plaintiff's] claim for breach of contractual representations and warranties into one for indemnification." *LBHI v. Universal*, No. 13-cv-00092-WJM-BNB, 2014 WL 4269118 at *3 (D. Colo. Aug. 28, 2014). The court's use of the term "convert" makes it unclear whether the court separately considered plaintiff's contractual indemnification claim. The Court does not find this case on point.[3]

Universal also argues that the Court erred in finding that plaintiff had established the elements of a claim for indemnification. Docket No. 122 at 11-12. An indemnitee who does not provide notice to an indemnitor "must establish that he would have been liable[,] that there was not [sic] good defense to the liability," and that "the amount paid

---

[3]Universal also argues, in cursory fashion, that plaintiff should not be allowed to pursue a separate claim for indemnification because the complaint did not plead a distinct cause of action for indemnification. Docket No. 122 at 7. The Court disagrees. Plaintiff alleged that "Universal *further breached the Agreement and Seller's Guide* by . . . failing to indemnify Lehman for its losses[.]" Docket No. 7 at 9, ¶ 45 (emphasis added). This allegation was sufficient to put Universal on notice that plaintiff considered Universal's failure to indemnify a distinct breach of the parties' contract.

[] was a reasonable amount." *Feuer v. Menkes Feuer, Inc.*, 187 N.Y.S.2d 116, 122 (N.Y. A.D. 1959). Universal cites to no evidence that undermines any of these elements, and the Court finds that each element is supported by undisputed evidence.

As to plaintiff's liability to Freddie Mac, plaintiff alleged that Universal breached the contract by representing that the borrower had owned her primary residence for four years, when in fact she had owned it for two months. Docket No. 47 at 14-16. The Court found that, even if there existed independent bases to grant the borrower a No Doc loan, Universal breached its representation that no "document, report or material furnished to [plaintiff] in any Mortgage Loan File or related to any Mortgage Loan . . . contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading." Docket No. 7-3 at 31, § 703(1). Freddie Mac cited the inaccuracy alleged by plaintiff as the basis for exercising its right to demand repurchase under Section 72.1 of the *Single-Family Seller/Servicer Guide*. Docket No. 47-5 at 1-3. Universal argues that Freddie Mac's communication was a mere "allegation" and that plaintiff has not established that it did not have any valid defense to Freddie Mac's repurchase demand. The agreement between plaintiff and Freddie Mac, however, provides that Freddie Mac is entitled to demand repurchase of any mortgage for which the information provided was not accurate. Docket No. 47-4 at 23. Universal does not suggest a defense available to Lehman given the undisputed evidence that Universal breached its representation that no documents related to Loan 5128 contained any untrue statement of fact and that this breach was the reason Freddie Mac demanded that plaintiff repurchase the loan.

As to the reasonableness of the amount paid to Freddie Mac, Freddie Mac's

Repurchase Loss Statement indicates that a balance of $140,234.55 was due on Loan 5128 by August 11, 2008, with an additional $18.21 to accrue each day after that. Docket No. 47-5 at 6.  On August 7, 2008, Aurora Loan Services, on behalf of LBHI, wired $1.5 million in make-whole funds to Freddie Mac, including $140,161.71 pertaining to Loan 5128.  Docket No. 47-5 at 18-21.  Universal does not provide evidence suggesting that this was not a reasonable price, or make any argument or showing that plaintiff's evidence does not establish that the repurchase price was unreasonable as required by Fed. R. Civ. P. 56(c).  As such, the Court finds that the evidence of record supports a finding that plaintiff was entitled to indemnification.

### B.  Plaintiff's Payment to Freddie Mac

Universal argues that the Court mistakenly held that evidence of plaintiff's payment to Freddie Mac was undisputed because plaintiff attached only a wire authorization and not actual proof of payment.  Docket No. 122 at 9.  Plaintiff argues that it produced evidence of both a wire authorization and a wire confirmation that showed payment to Freddie Mac for Loan 5128.  Docket No. 126 at 8.  In its reply, Universal abandons its argument that the wire authorization was insufficient evidence and advances an entirely new argument based on an allegedly new discovery.  Docket No. 131 at 9.

In its motion for partial summary judgment, plaintiff listed as an undisputed material fact that plaintiff "made Freddie Mac whole via a wire transfer that included payments for several loans, including $140,161.71 for Loan 5128." Docket No. 47 at 7, ¶ 29.  While defendant disputed that allegation, it did not offer evidence of its own to disprove any part of ¶ 29.  Instead, Universal provided an interpretation of plaintiff's

exhibits: "The cited exhibits appear to indicate that [plaintiff] was preparing to make a payment, as to a large number of loans." Docket No. 48 at 20.  Thus, Universal denied that plaintiff's exhibits proved a payment as opposed to proving preparations to make a payment.  Universal, however, failed to address the wire confirmation, which proves more than mere preparation for payment, and therefore failed to dispute the statement of material fact.  As a result, the Court did not err in finding that plaintiff's statement of material fact was undisputed.

Even if the Court considers defendant's "new evidence" argument, it provides no basis to reconsider the Court's finding.  First, the court will not consider any argument made for the first time in a reply brief.  *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("the general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief").  Second, the evidence that Universal relies upon is not "new."  The wire authorization that plaintiff produced as evidence of its payment to Freddie Mac contained seven items described as "Make Whole Funds," followed by a series of numbers with all but the last four digits redacted. *See* Docket No. 47-5 at 18.  Plaintiff claims that this wire authorization specifically identifies Loan 5128.  Docket No. 126 at 8.  None of the partially-redacted numbers listed under the "Description" heading in the wire authorization, however, end in 5128. *See id.*

According to Universal, it was not initially clear that the numbers under the "Description" heading referred to loan numbers, since the authorization listed only seven numbers, whereas plaintiff attached a spreadsheet to the wire authorization that listed thirteen loans.  Docket No. 131-2 at 4, ¶ 7.  Universal claims that, at some point

before September 15, 2014, it discovered that these numbers did, in fact, refer to loan numbers by reviewing documents produced in the matter of *Lehman Brothers Holdings Inc. v. Universal Am. Mortg. Co., LLC*, No. 13-cv-00088-CMA-MEH ("*LBHI II*"), a case between the same parties that was filed in this district on January 15, 2013 and was terminated on April 30, 2014. The wire authorization produced in *LBHI II* as proof of payment to Freddie Mac corresponded with the loan number identified in the complaint in that case. *Id.* at 4-5, ¶ 8; *see also* Docket No. 131-4 at 2. As a result, Universal argues, the wire authorization in this case, which does not include a number ending in 5128, "has nothing to do with the Horstmann loan." Docket No. 131 at 9.

The Court finds that the challenge to plaintiff's wire authorization is not based on previously unavailable evidence and is thus not appropriate to consider on a motion for reconsideration. Universal argues that the conclusions it recently drew from evidence produced in another case were "not readily apparent." Docket No. 131-2 at 4, ¶ 7. But "'[r]ecently identified' and 'previously unavailable' are clearly not synonymous." *Int'l Ins. Brokers, Ltd., L.L.C. v. Team Fin., Inc.*, 2007 WL 2891566 at *3 (N.D. Okla. Sept. 28, 2007). Universal attempts to excuse its failure to raise this argument in opposition to plaintiff's motion for summary judgment by citing the number of documents produced across all cases between the parties. Docket No. 131-2 at 4, n. 4 (noting that universal "received from LBHI approximately 15,737 pages of documents in all of the related Lehman matters"). But even if this total were so voluminous that it precluded thorough investigation of every document, Universal was aware of the significance of the document identified in its reply brief since at least October 25, 2013, when plaintiff

submitted that document as a key component of its proof of damages in *LBHI II*, *see LBHI II* (Docket No. 48-5 at 1), and the document was presumably produced to Universal before that date during the course of discovery. If Universal believed that plaintiff's evidence of its payment to Freddie Mac was insufficient, Universal had ample opportunity to determine the nature of the documents offered as proof of payment, including the meaning of any terms contained in those documents, through depositions and other discovery. A motion for reconsideration is not the proper forum to entertain new interpretations of "supporting facts which were available at the time of the original motion." *Servants of the Paraclete*, 204 F.3d at 1012.[4]

### C. Soundness of the Loan

Universal's last argument is that plaintiff's own conflicting statements to Freddie Mac concerning the soundness of Loan 5128 preclude summary judgment. Docket No. 122 at 12-14. In response, plaintiff claims that any statements it made to Freddie Mac regarding the soundness of the loan were in reliance on Universal's misrepresentations. Docket No. 126 at 10. Universal replies that, if plaintiff is to be taken at its word that it

---

[4]Universal also disputes that any payment made to Freddie Mac was on behalf of plaintiff as opposed to Lehman Brothers Bank ("LBB"), the party that originally purchased the loan from Universal. Docket No. 122 at 9-10. The Court has already addressed this issue and found no genuine dispute of material fact as to LBHI's rights to Loan 5128. *See* Docket No. 115 at 5-6, n.2. Universal's motion cites to the August 20, 2008 letter from Aurora Loan Services to Universal and argues that the letter demanded payment on behalf of LBB rather than plaintiff. Docket No. 122 at 10-11. The Court already considered this letter and found it to be a mere scintilla of evidence that was insufficient to create a genuine dispute of fact in light of the substantial undisputed evidence that LBB transferred its interest in Loan 5128 to plaintiff, and plaintiff in turn sold the loan to Freddie Mac. Universal's challenge to the Court's finding is not based on newly-discovered evidence and does not constitute clear error warranting reconsideration.

relied solely on Universal's representations, that would be "tantamount to admitting fraud" because Freddie Mac required updated, independent representations and warranties.  Docket No. 131 at 8-9.

Even if the Court were to credit Universal's argument in full, its legal effect is unclear.  Universal has admitted all of the facts necessary to find that Loan 5128 was unsound at the time Universal transferred it to plaintiff.  Universal admitted that it sold Loan 5128 to Aurora Loan Services, the agent for LBB, subject to the representations and warranties contained in the Seller's guide.  Docket No. 48 at 17 (admitting in part plaintiff's Statement of Undisputed Material Facts ("SUMF") ¶ 7).  Universal further admitted that Loan 5128 was a "No Doc" loan, *id.* at 18 (admitting in part SUMF ¶ 14), that the loan was intended to secure an investment property, *id.* (admitting SUMF ¶ 16), and that public records showed that the borrower was not eligible for such a loan.  *Id.* (admitting SUMF ¶ 17).  Plaintiff's subsequent statements to Freddie Mac regarding the validity of the loan, whether or not they were made in reliance of Universal's earlier representations, do not create a dispute of fact concerning Universal's breach of its warranty that no document in any mortgage loan file "contains any untrue statement of fact."  Docket No. 7-3 at 31, § 703(1).  As to Universal's claim that plaintiff's reliance on Universal's misrepresentations amounts to fraud on Freddie Mac, the Court has already held that under New York law, Universal is liable to plaintiff for breaching warranties in the agreement that are co-extensive with the warranties plaintiff breached in its contract with Freddie Mac.  Docket No. 115 at 24 (citing *Assured Guaranty Mun. Corp. v. DB Structured Prods., Inc.*, 927 N.Y.S. 2d 880, 895 (N.Y. Sup. Ct. 2011).  As such, Universal has not demonstrated a genuine dispute of fact concerning whether Universal

breached the agreement.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Universal American Mortgage Company, LLC's Motion to Amend Judgment Pursuant to Fed. R. Civ. P. 59 [Docket No. 122] is **DENIED**.

DATED October 9, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge